FOURTH DIVISION

MAY 13, 2004

1-03-1573 

KENNETH ANDERSON, M.D., ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

v. )

)

ILLINOIS DEPARTMENT OF PROFESSIONAL ) 

REGULATION, and FERNANDO E. GRILLO, ) 

Director of the Illinois Department )

of Professional Regulation, ) Honorable

) Nancy J. Arnold,

Defendants-Appellants. ) Judge Presiding.

JUSTICE HARTMAN delivered the opinion of the court:

This administrative review action was brought by plaintiff, Kenneth Anderson, M.D., against defendants, the Illinois Department of Professional Regulation (the Department) and its Director, to contest the Director’s decision that Dr. Anderson’s acts "and/or" omissions constituted gross negligence and dishonorable, unethical, or unprofessional conduct in violation of the Medical Practice Act of 1987 (the Act) (225 ILCS 60/1 
et
 
seq.
 (West 2000)).  The circuit court reversed the Director’s decision and the Department appealed.

The Department filed a two count complaint against Dr. Anderson  alleging that he had committed gross negligence and unethical or unprofessional conduct by performing hernia surgery on the wrong side of a four year old patient.  Specifically, the complaint alleged that Dr. Anderson had (1) failed to examine C.S. prior to starting surgery on April 13, 1998; (2) performed unnecessary surgery on the incorrect side of C.S.’s body; and (3) subjected C.S. to unnecessary surgery which could not resolve his medical condition.
(footnote: 1) 

The following testimony was adduced at an evidentiary hearing before an administrative law judge (ALJ):

Dr. Anderson testified that he is a board certified general surgeon.  He had been chairman of the surgery department at St. Francis Hospital since July 1, 1997.  On March 10, 1998, C.S. came to Dr. Anderson’s office for an examination and evaluation of an inguinal hernia, upon referral by Dr. Robert Jordan.  The  referral authorization form from Dr. Jordan stated inguinal hernia, but did not indicate which side.  On March 10, 1998, a history and physical form was filled out by a nurse after interviewing the patient and his mother.  The history and physical form, which was completed prior to Dr. Anderson entering the examining room, stated left inguinal hernia.  Dr. Anderson scanned this form from top to bottom before examining C.S. 

Dr. Anderson examined C.S. on March 10, 1998, diagnosed a right inguinal hernia, and recommended surgery.  The office chart included a progress note dictated and signed by Dr. Anderson indicating his diagnosis of right inguinal hernia.  Dr. Anderson wrote a note to Dr. Jordan on March 10, 1998, stating that he had seen C.S. for a right inguinal hernia and would schedule surgery to repair the condition.  The office chart also contained a consent to surgery form, however, prepared by Dr. Anderson’s nurse and signed by C.S.’s mother which authorized repair of a left inguinal hernia. 

On March 12, 1998, Dr. Anderson’s office sent a referral request form to the managed care network requesting authorization to perform surgery to repair a right inguinal hernia.  The referral form received on April 10, 1998, from the managed care network  authorized repair of a right inguinal hernia.  Upon receipt of the authorization, Yolanda, a nurse in Dr. Anderson’s office, scheduled surgery for a left inguinal hernia.  Dr. Anderson never saw the referral form received from the managed care network.  Neither the referral form, nor Dr. Anderson’s office notes were included in the hospital chart. 

Dr. Anderson testified that he did not bring his office notes to the hospital on the day of the surgery; nor did he review those notes at any time prior to performing the surgery.  He admitted that if he had, he would not have performed the surgery on C.S.’s left side.  Dr. Anderson did not examine C.S. on the day of surgery.  The reason was that he thought it impractical to do so in the surgical holding area due to the lack of privacy.  Further, all documents in the hospital chart indicated a left inguinal hernia:  (1) the consent to surgical procedure form filled out by a nurse at the office and signed by C.S.’s mother indicated a left inguinal hernia; (2) the admission assessment listed C.S.’s chief complaint as left inguinal hernia; (3) the pre-anesthesia evaluation form noted a pre-operative diagnosis of left inguinal hernia; (4) the surgical procedure permit filled out on the day of the surgery and signed by C.S.’s mother indicated left inguinal hernia; and (5) the same day surgery/short stay form signed by Dr. Anderson indicated he had performed a physical examination of the patient and stated that there was a left inguinal hernia.  Dr. Anderson testified that he relied upon the documents in the hospital chart and his memory in preparing the same day surgery/short stay form. 

On April 13, 1998, Dr. Anderson attempted to perform a herniorrhaphy on C.S.’s left side.  The post-operative report indicated that no hernia was found on the left side.  Two hours after surgery, Dr. Anderson explained to C.S.’s parents that he did not find a hernia and believed there had been a misdiagnosis.  When C.S.’s mother saw the dressing on the surgical site she informed Dr. Anderson that the hernia was on the right side. 

Dr. Andrew Gorchynsky, chief medical coordinator for the Department, testified as an expert for the Department.  He explained that “laterality” refers to a medical situation involving a particular side or area.  According to Dr. Gorchynsky, it is imperative to identify the anatomic location in any type of surgery involving laterality.  The surgeon must be 100 per cent certain that he is operating on the proper side or area.  Dr. Gorchynsky stated that a surgeon should rely on his own examination and his own records because the surgeon ultimately is responsible for the care of the patient.  Prior to performing surgery Dr. Gorchynsky reviews his own notes from the original and any subsequent consultations with the patient and speaks with the patient on the day of the surgery.  He usually reviews his notes the day before the surgery and generally brings his records to the hospital; but not always.  He relies on his own personal records if laterality is involved in the surgery.  

In Dr. Gorchynsky’s opinion, Dr. Anderson engaged in unprofessional and unethical conduct based on a breach of responsibility to his patient by operating on the wrong side.  Dr. Anderson also caused actual harm to a member of the public.   Dr. Gorchynsky believed that by performing surgery on the wrong side, Dr. Anderson committed an act or omission that constituted recklessness or carelessness causing injury to C.S.    According to Dr. Gorchynsky, Dr. Anderson could have avoided the situation by referring to his original progress note, re-examining C.S. on the day of the surgery, or speaking to C.S.’s parents to confirm the surgical site. 

Dr. Gorchynsky observed that all of the hospital records available to Dr. Anderson on April 13, 1998, indicated that C.S. required surgery for a left inguinal hernia, except for one document which did not indicate a side.  A surgeon has the duty to operate on the correct side of a patient and it is careless and reckless to operate on the wrong side.  Dr. Anderson was reckless and careless in not checking his own personal records prior to conducting the surgery, whether or not he brought them to the hospital.  Further, he was reckless and careless when he completed the same day/short stay record in which he indicated that C.S. had a left inguinal hernia which was inconsistent with his initial diagnosis as reflected in his dictated progress note and his letter to Dr. Jordan.  On cross-examination, Dr. Gorchynsky stated that a physician might rely on his memory even if the surgery were over a month after his physical examination of the patient and that there was no standard as to how much a physician can rely upon his own memory as opposed to reviewing the medical records.               

Dr. Barry Rosen testified as an expert witness for Dr. Anderson.  He reviewed C.S.’s hospital records and Dr. Anderson’s office records.  Dr. Rosen stated that it was within the standard of care not to examine C.S. in the surgical holding area prior to surgery since all the documents in the hospital chart indicated C.S. suffered from a left inguinal hernia.  He also noted that there was too little privacy in the surgical holding area to allow for an examination.  According to Dr. Rosen, Dr. Anderson did nothing with regard to his treatment of C.S. that was reckless, careless or in breach of his duty of care.  Dr. Anderson’s actions were within the standard of care for surgery.  There were no discrepancies in the hospital record to alert Dr. Anderson to a surgical site problem.         

Dr. Eloy Moscoso, a former chairman of the medical disciplinary board, testified as an expert witness for Dr. Anderson.  He reviewed the hospital records, Dr. Anderson’s office records, and discussed the case with Dr. Anderson.  He noted that everything in the hospital records indicated that C.S. had a left inguinal hernia.  In his opinion, the care Dr. Anderson gave C.S. was not gross negligence or unethical or unprofessional conduct.  This case involved mistakes, but not of a nature as to rise to the level of culpability under the Act.  According to Dr. Moscoso, where all the documents in the hospital record indicated a left inguinal hernia, the standard of care did not require Dr. Anderson to perform an examination of C.S. in the pre-operation holding area.   

Janet Jansky, a nurse employed by Dr. Anderson, testified that she filled out the office health history form for C.S. on March 10, 1998, that indicated the reason for the visit was a left inguinal hernia.  When she asked C.S.’s mother why he was seeing the doctor, she stated it was for a left inguinal hernia.  The form was completed before Dr. Anderson came into the examining room.  Jansky also filled out and signed a surgical consent form on March 10, 1998, that indicated C.S. was to undergo a left inguinal herniorrhaphy.  She completed the form based on the information she had obtained from C.S.’s mother.

The ALJ found that the Department did not prove by clear and convincing evidence that Dr. Anderson’s conduct was gross negligence or unprofessional.  She recommended that Dr. Anderson’s medical license remain in good standing and that a letter of concern be issued.

The Medical Disciplinary Board (the Board), finding Dr. Gorchynsky to be more qualified and giving his testimony more weight, disagreed with the ALJ.  The Board found that the following acts or omissions by Dr. Anderson constituted carelessness "and/or" recklessness toward or a disregard for the safety and well-being of C.S. and resulted in injury to C.S. and also constituted a breach of Dr. Anderson’s responsibility to C.S.: (1) failed to examine C.S. prior to commencing surgery on April 13, 1998; (2) performed unnecessary surgery on the incorrect side of C.S.’s body; (3) subjected C.S. to unnecessary surgery that could not resolve his medical condition; and (4) failed to review his office chart for C.S. prior to surgery.  The Board concluded that the Department had proven by clear and convincing evidence that Dr. Anderson’s acts "and/or" omissions constituted gross negligence and dishonorable, unethical or unprofessional conduct in violation of the Act.  The Board recommended that Dr. Anderson’s medical license be reprimanded.  In July 2002, the Director adopted the decision of the Board and reprimanded Dr. Anderson’s license.
(footnote: 2)
 Dr. Anderson sought administrative review of the Department’s decision.  In reversing the decision of the Department, the circuit court found that there was no evidence to support the Director’s conclusion that Dr. Anderson’s actions constituted gross negligence or unprofessional conduct.  The court also found that the Department had failed to present proof as to the standard of care and whether Dr. Anderson deviated from it in a manner that would constitute gross negligence. 

The Act provides for review of all final administrative decisions of the Department under the Administrative Review Law (ARL) (735 ILCS 5/3-101 
et
 
seq.
 (West 2000)).  225 ILCS 60/41 (West 2000).  In a case arising under the ARL, it is the administrative agency’s decision that is reviewed, not the circuit court’s determination.  
Wilson v. Illinois Department of Professional Regulation
, 317 Ill. App. 3d 57, 739 N.E.2d 57 (2000); 
Gounaris v. City of Chicago
, 321 Ill. App. 3d 487, 747 N.E.2d 1025 (2001).  An administrative agency’s factual findings are deemed to be 
prima
 
facie
 true and correct and may be set aside only if they are against the manifest weight of the evidence.  735 ILCS 5/3-110 (West 2000); 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 692 N.E.2d 295 (1998) (
Belvidere
). 
 A 
de
 
novo
 standard of review is applied to findings on questions of law.  
Belvidere
, 181 Ill. 2d at 205.  Where, as in the case 
sub
 
judice
, the case involves an examination of the legal effect of a given set of facts, it involves a mixed question of law and fact, and the administrative agency’s decision will be affirmed unless clearly erroneous.  
Belvidere
, 181 Ill. 2d at 205.  A decision will be deemed clearly erroneous only where the reviewing court, on the entire record, is “‘left with the definite and firm conviction that a mistake had been committed.’” 
AFM Messenger Service, Inc. v. Department of Employment Security
, 198 Ill. 2d 380, 763 N.E.2d 272 (2001)
, quoting 
United States v. United States Gypsum Co.
, 333 U.S. 364, 395, 92 L. Ed. 746, 766, 68 S. Ct. 525, 542 (1948).      

At issue is whether the Director’s determination that Dr. Anderson’s acts "and/or" omissions constituted gross negligence and dishonorable, unethical or unprofessional conduct in violation of the Act was clearly erroneous.

Section 22(A) of the Act (225 ILCS 60/22(A) (West 2000)), provides that the Department may revoke, suspend, place on probationary status or take any other disciplinary action regarding a medical license that the Department deems proper based upon several grounds.  Section 22(A)(4) authorizes such discipline based on “[g]ross negligence in practice under this Act.”  225 ILCS 60/22(A)(4) (West 2000).  Section 22(A)(5) allows such discipline where the physician engaged in “dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public.”  225 ILCS 60/22(A)(5) (West 2000).  The Department is required to establish a violation of the Act by clear and convincing evidence.  68 Ill. Adm. Code §1110.190(a) (2001).  

The Department has defined “gross negligence” as “an act or omission which is evidence of recklessness or carelessness toward or a disregard for the safety or well-being of the patient, and which results in injury to the patient.”  68 Ill. Admin. Code §1285.240(c) (2001).  In determining what constitutes dishonorable, unethical, or unprofessional conduct, the Disciplinary Board “shall consider whether the questioned activities:  A) Are violative of ethical standards of the profession ***; B) Constitute a breach of the physician’s responsibility to a patient; *** E) Caused actual harm to any member of the public.”  68 Ill. Adm. Code §1285.240(a)(1)(A),(B) & (E) (2001).

Dr. Anderson argues that the Department failed to present sufficient expert testimony to support the Director’s decision.  According to Dr. Anderson, Dr. Gorchynsky’s testimony was insufficient because he set forth nothing more than a strict liability theory for gross negligence.  It is for the Director, as the trier of fact, to evaluate all evidence, judge the credibility of witnesses, resolve any conflicts in the evidence, and draw reasonable inferences and conclusions from the facts.  
  
Maun v. Department of Professional Regulation
, 299 Ill. App. 3d 388, 701 N.E.2d 791 (1998). 

Dr. Anderson relies on four cases for the basic proposition that expert testimony is required to establish a violation of the Act.  See 
Obasi v. Department of Professional Regulation
, 266 Ill. App. 3d 693, 639 N.E.2d 1318 (1994); 
Chase v. Department of Professional Regulation
, 242 Ill. App. 3d 279, 609 N.E.2d 769 (1993); 
Farney v. Anderson
, 56 Ill. App. 3d 677, 372 N.E.2d 151 (1978); 
Smith v. Department of Registration and Education
, 412 Ill. 332, 106 N.E.2d 722 (1952).  In each of these cases there was a total lack of expert testimony regarding the applicable standard of care.  

In the case at bar, the Director’s decision was supported by the requisite expert testimony regarding the applicable standard of care.  Dr. Gorchynsky testified that a surgeon has a duty to operate on the correct side of a patient and it is careless and reckless to operate on the wrong side.  He explained that “laterality” refers to a medical situation involving a particular side or area.  According to Dr. Gorchynsky, it is imperative that the surgeon identify the proper anatomic location in any type of surgery involving laterality.  The surgeon must be 100 per cent certain that he is operating on the proper side or area.  According to Dr. Gorchynsky, a surgeon can accomplish this by reviewing his own office notes prior to the surgery, re-examining the patient prior to surgery, and/or speaking to the patient, or to the parent if the patient is a minor, to confirm the surgical site.  The surgeon should rely on his own examination and his own personal records because the surgeon ultimately is responsible for the care of the patient.  Dr. Gorchynsky’s testimony established that the applicable standard of care required Dr. Anderson to assess and verify the correct anatomic location for the surgery before operating on C.S.  

   Evidence in the record further supported the Director’s finding that Dr. Anderson breached that standard of care.  Dr. Anderson admitted that he did not review his office notes prior to the surgery.  Instead, he relied upon documents prepared by others and his own memory of a physical examination that occurred at least one month prior to the surgery.  As of March 10, 1998, he was aware of an inconsistency in the documents regarding the site of the hernia.  The history and physical form, which he testified that he scanned from top to bottom before examining C.S., indicated a left inguinal hernia.  Dr. Anderson’s progress note and letter to Dr. Jordan indicated a right inguinal hernia.  Dr. Anderson took no action to correct the medical history form.  This was not an emergency situation.  Dr. Anderson had one month to review his notes prior to the surgery; he did not.

After reviewing the entire record, this court is not left with a definite and firm conviction that a mistake has been made.  The Director’s decision was not clearly erroneous and therefore must be affirmed.

For the reasons set forth above, the judgment of the circuit court of Cook County is reversed and the decision of the Director is reinstated.

Reversed.

GREIMAN and THEIS, J.J., concur.

FOOTNOTES
1:
The Department also charged Dr. Anderson with failing to recognize the error until after C.S. was discharged from the hospital.  This charge was dismissed for lack of evidence at the conclusion of the Department’s case in chief.

2:
Reprimand is defined as "[a] public and formal censure or severe reproof, administered to a person in fault by his superior officer or by a body or organization to which he belongs."  Black's Law Dictionary 1170 (5th ed. 1979).