FOURTH DIVISION

                                               July 29, 2005

No. 1-03-0732

GEOFFREY MAGNUS,                           )     Appeal from 

                                           )  the Circuit Court

Plaintiff-Appellant,                  )    of Cook County. 

                                           )

     v.    
                       )

                                           )

THE DEPARTMENT OF PROFESSIONAL REGULATION  )

and LEONARD A. SHERMAN, Director,          )

A. SHERMAN, Director,                      )      Honorable 

                                      )   John K. Madden 

Defendants-Appellees.                 )   Judge Presiding.

                                    
            

    

JUSTICE QUINN delivered the opinion of the court:

Plaintiff Geoffrey Magnus filed a complaint for  administrative review seeking to reverse a decision by the Illinois Department of Professional Regulation (Department) that suspended his license to practice clinical social work for 60 days and placed him on a two-year period of probation based on the Department's determination that plaintiff exhibited professional incompetence and committed malpractice.  The circuit court denied administrative review and affirmed the Department's determination.  On appeal, plaintiff contends that the Department's determination was clearly erroneous and that he was prejudiced by numerous procedural errors during his hearing.  For the following reasons, we reverse and remand with instructions.

I. BACKGROUND

Plaintiff became a licensed clinical social worker in 1989 and was subsequently employed by the University of Illinois College of Medicine in Rockford, Illinois.  Plaintiff's employment involved providing psychotherapy services to adults and children assigned to him by the university.

In March 1998, plaintiff began providing treatment services to a 13-year-old male, identified as M.G.  Plaintiff continued to provide professional services to M.G. after M.G. pled guilty to a delinquency petition for aggravated criminal sexual abuse involving his three-year-old cousin in October 1998.  As a condition of probation, M.G. was required to continue his treatment with plaintiff.  

In July 1999, M.G.'s probation officer, Brenda Johnson, submitted a charge against plaintiff to the Department, alleging that plaintiff encouraged M.G.'s adolescent sexual activity and instructed M.G. on sexual technique.  In December 1999, the Department ordered plaintiff to submit to a mental and physical examination performed by Dr. Stafford Henry.  In accordance with plaintiff's request, Dr. Stephen Dinwiddie was also present at the examination.   

On June 5, 2000, the Department filed an administrative 

complaint against plaintiff relating to services he provided M.G.  The complaint alleged that M.G. told his probation officer,  Johnson, that he had been having sexual relations with another juvenile and that plaintiff not only encouraged this behavior, but instructed M.G. on how to relax his anal sphincter muscle so that he would not experience pain during sexual activity.  The complaint also alleged that plaintiff informed Johnson that M.G. was having sexual relations with "many young boys," that he instructed M.G. on how to relax his anal sphincter muscle so that M.G. would not experience pain during sexual activity, and that he "was encouraging a sexually pure relationship which is a step up from pedophilia."  The complaint further alleged that M.G. told a Department investigator that plaintiff stated that "it was ok to have sex with other kids as long as they were at least twelve years old."  The complaint lastly alleged that plaintiff failed to intervene, discourage or report M.G.'s activities to appropriate authorities.        

    Based on these allegations, the Department's complaint 

asserted that plaintiff's acts and omissions were grounds for revocation or suspension of his license pursuant to sections 19(1)(e),(f),(i) and (r) of the Clinical Social Work and Social Work Practice Act (Act) (225 ILCS 20/19(1)(e),(1)(f), (1)(i), (1)(r) (West 2002)).  Section 19(1) of the Act provides in relevant part:

"(1) The Department may refuse to issue, refuse 

to renew, suspend, or revoke any license, or may place 

on probation, censure, reprimand, or take other 

disciplinary action deemed appropriate by the 

Department, including the imposition of fines not 

to exceed $1,000 for each violation, with regard to 

any license issued under the provisions of this Act 

for any one or a combination of the following reasons:

* * *

(e) professional incompetence;

(f) malpractice;

* * *

(i) engaging in dishonorable, unethical or unprofessional conduct of a character likely to deceive, defraud or harm the public as defined by the rules of the Department, or violating the rules of professional conduct adopted by the Board and published by the Department;

* * *

(r) physical or mental disability, including deterioration through the aging process, or loss of abilities and skills which results in the inability to practice the profession with reasonable judgment, skill or safety."  225 ILCS 20/19(1)(e), (1)(f), (1)(r) (West 2002).

Plaintiff filed an answer to the Department's complaint and hearings were held before an administrative law judge (ALJ) over the course of 11 days.   

At the hearing, Johnson testified that in April 1999, M.G. informed her that he was engaging in sexual activity and that plaintiff told him that as long as he had "sex with someone over eight years old, it is okay."  Johnson then contacted plaintiff and he provided her with details regarding M.G.'s past sexual relationships, including participation in group sexual activity.  Plaintiff admitted to encouraging M.G.'s current sexual relationship and explained that counseling M.G. had become more effective.  Johnson's notes from the conversation indicated that plaintiff taught M.G. "how to relax his sphincter muscle" so that anal sex would be less painful.  Johnson also noted that plaintiff commented that the rule against M.G. associating with other juveniles on probation was "silly."  Plaintiff also told Johnson that he "was encouraging a sexually pure relationship which is a step up from pedophilia."  Johnson also testified that plaintiff contacted her when he learned she was going to meet with M.G.'s parents and denied saying that he encouraged M.G.'s sexual relationship. 

M.G.'s mother testified that in April or May 1999, Johnson informed her of M.G.'s sexual activity.  M.G. told his mother that he spoke with plaintiff about it and that plaintiff said it was "okay" and that M.G. could "have sex with anybody [he] want[s] to, a boy or girl, as long as they are over eight years old."  M.G.'s mother also testified that she informed plaintiff about events in M.G.'s life, but that plaintiff did not tell her what was happening in the counseling sessions with M.G.

Dr. Henry testified that he conducted a Department-required multidisciplinary evaluation of plaintiff, which included a lengthy interview.  Plaintiff told Dr. Henry that he had encouraged M.G. to have a "consensual, private, age-appropriate relationship."  When M.G. related his sexual history to plaintiff, plaintiff told him that "he could do better" and that he "should try to attain a quality relationship."  Plaintiff also told Dr. Henry that he had a "fleeting recollection of telling the minor [M.G.] that relaxing the anal sphincter can be facilitated by going into a trance."  

Plaintiff expressed to Dr. Henry that M.G.'s having sexual relations with peers was better than having sex with young boys and felt that M.G.'s contacts with peers was leading him away from committing offenses with young boys.  Plaintiff also noted that it would be inappropriate to either discourage or report M.G.'s sexual conduct because he was "going to have sex anyway."  Plaintiff also told Dr. Henry that one of M.G.'s treatment goals was for him to accept his homosexuality.

Dr. Henry also testified that he is licensed to practice medicine and was board certified for general, adult, forensic and addiction psychiatry, but was not board certified for adolescent or child psychology.  Dr. Henry admitted that he was not an expert in the treatment of adolescent sexual offenders, but denied plaintiff's suggestion that he lacked knowledge of how to treat adolescents and stated that he is experienced in the area.

Dr. Henry testified that it was inappropriate for plaintiff to convey that a 13-year-old could have a "consensual, mature, private relationship."  Telling M.G. that "he could do better" implied that he encouraged and accepted M.G.'s sexual behavior.  Dr. Henry expressed his opinion that plaintiff had an absolute obligation to do everything possible to stop M.G.'s sexual behavior, including contacting his parents and the courts.  Dr. Henry also testified that in this case it was below the standard of care of a social worker not to inform M.G.'s parents of his sexual activity.   

Dr. Henry's medical and psychiatric opinion was that if plaintiff commented about M.G. relaxing his anal sphincter, it was not only inappropriate but egregious.  Dr. Henry testified that anal intercourse posed numerous risks, including perforation of the colon, infection, contracting AIDS, and psychological damage.

Dr. Henry's medical and psychiatric opinion was that it is inappropriate to tell or encourage a patient to accept that he is a homosexual at the age of 13 because one's sexual object choice is not consolidated at this young age.

Dr. James Marley testified that he is a licensed clinical social worker.  Dr. Marley noted that a 13-year-old's sexual identity has not been solidified and that in his opinion it was inappropriate to treat M.G.'s sexual behavior as a sexual identity issue rather than a possible psychological disorder.  Dr. Marley's opinion was that it was also inappropriate for plaintiff to encourage a "sexually pure" relationship because a 13-year-old generally lacks sufficient insight to make such evaluations.  Dr. Marley also indicated that social workers are trained to put important matters in their notes, and that he saw nothing in plaintiff's notes to indicate that plaintiff discouraged M.G.'s sexual activity.  Rather, Dr. Marley would interpret an attempt to instruct a patient how to relax his anal sphincter or an attempt to have a patient evaluate the quality of the relationship as an encouragement to continue having sex.

Dr. Marley testified that pursuant to the "Juvenile Family and Court Journal" and "Code of Ethics," plaintiff had a duty to notify M.G.'s parents and probation officer about his sexual activities and should have led M.G. into a period of sexual abstinence.  Dr. Marley also noted that M.G.'s behavior posed risks to the other young adolescents involved.  

Plaintiff testified that he discussed M.G.'s sexual relationship with Johnson on April 15, 1999, and she was already aware of the relationship.  Plaintiff denied encouraging the relationship but stated that he was encouraged that M.G. was discussing his past sexual experiences so that he could address them.  Plaintiff acknowledged his prior statement that ordering M.G. to stop associating with the boys he was sexually involved with would be "silly."  Plaintiff admitted he told Dr. Henry that M.G. having sex with other adolescents "was better than abusing little boys or acting out in public."  

At the hearing before the ALJ, plaintiff testified when M.G. told plaintiff that anal sex did not hurt anymore, plaintiff responded: "that's because you learned to relax your anal sphincter."  M.G. then asked, "How do you do that?"  Plaintiff answered, "Oh, it's something like when you went into a trance, you relaxed everything, you relaxed that muscle."  Plaintiff also testified that in a conversation on March 9, 1999, M.G. told him that he had reestablished a sexual relationship with "B.," a fellow 13- or 14-year-old.  Upon learning this, plaintiff testified that he told M.G., "Well, at least it's age appropriate, consenting and in private.  If it were in a committed, caring relationship, you would have it all.  Then I told [M.G.] that it was my value that kids wait."

Plaintiff testified that during that same conversation, M.G. asked plaintiff whom he could have sex with.  Plaintiff testified, "I believe my words were, if he was over eighteen, he is committing a felony; and if he is twelve or under you are committing a felony."  Plaintiff testified that "It is now my understanding that for minors between the ages of thirteen and seventeen to have any sexual contact is a Class A misdemeanor in Illinois.  I was not aware of that at the time."  Plaintiff further testified that he was unaware that having sex with other juveniles was a violation of M.G.'s terms of probation.

After plaintiff's expert, Dr. Rosenfeld testified, plaintiff informed the ALJ that during the March 9, 1999, conversation, he had further told M.G., "I am not too sure what is legal and what isn't.  I know in Wisconsin there is something about age difference.  You have to be very careful and use common sense.  They have to be able to consent.  I hope at least you know that it wasn't okay with someone who would be eight or nine."

Plaintiff also testified that he did not discourage M.G. from engaging in sexual contact with other children, explaining: "psychotherapy is not telling people what to do.  I really don't think it is the duty of the psychotherapist to enforce the rules."  Plaintiff further testified that he pointed out the dangers of unprotected sex to M.G. and made reference to his own values that children not have sex, which he referred to as "the old fogy" in him coming out.  Finally, plaintiff admitted that he did not inform anyone that M.G. was having sex on a regular basis with "B."  

Plaintiff presented the testimony of seven experts who all agreed that he delivered appropriate care to M.G.  Dr. Louis Kraus testified that he is a psychiatrist and is board certified in general psychiatry, child and adolescent psychiatry and forensic psychiatry.  Dr. Kraus testified that plaintiff's treatment was completely appropriate and that plaintiff did not breach a duty by not telling the court about M.G.'s sexual activities when he first learned about it on March 9, 1999.  Dr. Kraus also testified that it was not essential for M.G. to become sexually abstinent and telling kids to do so is usually not effective.  Dr. Kraus testified that plaintiff responded impulsively when he made comments to M.G. regarding his anal sphincter.  As to whether M.G. engaging in anal intercourse posed a risk of harm to him, Dr. Kraus testified that "kids die in their teenage years, are hurt, are infected with diseases, and that is what happens in teenage years."  

Dr. Henry Conroe testified that he is a psychiatrist and is board certified in general and forensic psychiatry.  Dr. Conroe found plaintiff to be truthful and testified that plaintiff's interaction with M.G. was appropriate.  Dr. Conroe disagreed that plaintiff had a duty to immediately intervene to stop M.G.'s sexual activity and noted that plaintiff was trying to gain M.G.'s trust.  Dr. Conroe also denied that plaintiff had a duty to report M.G.'s actions to the probation officer or his parents.  Dr. Conroe refused to offer an opinion whether it would be appropriate for a social worker to teach a juvenile how to relax his anal sphincter.

Dr. Robert Slack testified that he is a psychiatrist and is board certified in treating both children and adults.  As plaintiff's supervisor, Dr. Slack has known plaintiff for about 11 years.  When asked if he was concerned about potential liability in this case, he responded that he had a "much deeper bias" where he felt responsibility for the treatment provided by the department he supervises.  Dr. Slack testified that the overall quality of plaintiff's care was "excellent."  Dr. Slack thought that plaintiff should have stopped M.G.'s sexual relationship with other juveniles by working with others involved with M.G., but stated that he believed plaintiff did so.  Dr. Slack agreed that if M.G. was not able to tell his parents about his sexual relationship, plaintiff should have done so, but Dr. Slack believed M.G. was capable of telling his parents. 

Dr. David Rosenfeld testified that he is a licensed clinical social worker.  Rosenfeld testified that most social workers do not consider confidentiality to be inviolate, but use a test of the greatest good for the greatest number of people.  Dr. Rosenfeld stated that plaintiff had no duty to report M.G.'s sexual relationship because it was not a relationship between an adult and child.  Dr. Rosenfeld also stated that if M.G.'s activity was a violation of probation, there would be a duty to report.  Dr. Rosenfeld also expressed some criticism of plaintiff's comments regarding how to relax the anal sphincter and thought that colloquy may have been a therapeutic error.  Dr. Rosenfeld also thought plaintiff erred when he attempted to explain the law in Illinois regarding sex between children, but may have explained the law in Wisconsin.

Dr. Arnold Levin testified that he was a social worker for more than 50 years and had experience in treating both children and adults.  Dr. Levin testified that M.G.'s sexual activity was "risky" behavior.  He also testified that he would not have discussed information about relaxing the anal sphincter with a child.  Dr. Levin did not think the probation officer should have been informed about M.G.'s activity, but if the sexual relationship was exploitive, the parent should have been involved.  Dr. Levin acknowledged that if plaintiff had told the probation officer about M.G.'s sexual activity earlier, the sexual relationship may have ended sooner.

Dr. Dinwiddie testified that he is board certified in general psychiatry and attended Dr. Henry's interview with plaintiff.  Plaintiff told Dr. Dinwiddie that he should have clarified the court's expectations, documented his contacts with the probation officer and refrained from mentioning the anal sphincter.  Dr. Dinwiddie testified that it would have been inappropriate for a therapist to instruct M.G. how to relax his anal sphincter, but did not think the discussion about the anal sphincter was inappropriate in this context. 

At the conclusion of these proceedings, the ALJ issued a report and recommendation to the Department's Social Work Examining and Disciplinary Board (Board).  In this report, the ALJ concluded that the Department had proven by clear and convincing evidence that plaintiff's actions constituted grounds for disciplinary action for professional incompetence; malpractice; engaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud or harm the public; and physical or mental disability pursuant to sections 19(1)(e),(f),(i) and (r) of the Act (225 ILCS 20/19(1)(e),(1)(f),(1)(i),(1)(r) (West 2002)).  As to her finding that plaintiff committed malpractice, the ALJ specifically found:

"The Department also proved that Respondent committed malpractice.  Malpractice is generally defined as a professional's improper or immoral conduct in the performance of duties, done either intentionally or through carelessness or ignorance.  Once again, as discussed above, Respondent did engage in improper conduct in the way that he failed to report M.G.'s activity and actually encouraged sexual activity through discussions like the anal sphincter muscle colloquy.  In addition, it is clear that Respondent was unfamiliar with and unsure of Illinois state laws and as a result, conveyed the wrong messages to M.G.  Even if Respondent were clear about the laws, it is not certain that he still would have conveyed the correct messages to M.G.  Respondent seemed fixed in his opinions about sex being fine with minors and it is doubtful that even if he knew the law he would have actually promoted it or enforced it with M.G.

There are several examples of Respondent's unfamiliarity with Illinois laws which in this case constitutes malpractice.  It should be noted that Respondent even admitted that he misstated Illinois law.

Respondent told M.G. that if he were to have a committed relationship with an age-appropriate peer, M.G. would have it all.  By condoning sex with another minor, Respondent was promoting criminal sexual abuse.  According to the criminal offenses statute, section 720 ILCS 5/12-15, criminal sexual abuse is defined as '(b) The accused commits criminal sexual abuse if the accused was under 17 years-of-age and commits an act of sexual penetration or sexual conduct with a victim who was at least 9 years-of-age but under 17 years-of-age when the act was committed.'  The sentence is a Class A misdemeanor.  A second or subsequent conviction for a violation of subsection (a) of this Section is a Class 2 felony.

* * *

Respondent's failure to intervene and to report M.G.'s sexual activity to the parents, the probation officer and the courts constituted unprofessional conduct, malpractice and displayed incompetence as well as disability in social work practice.  Both Dr. Henry and Dr. Marley indicated that Respondent had an obligation to report M.G.'s sexual activities.  Under the Illinois Mental Health and Developmental Disabilities Confidentiality Act, 740 ILCS 110/11, Section (ii) states that:

'Records and communications may be disclosed when, and to the extent, a therapist, in his or her sole discretion, determines that disclosure is necessary to initiate or continue civil commitment proceedings under the laws of this State or to otherwise protect the recipient or other person against a clear, imminent risk of serious physical or mental injury or disease or death being inflicted upon the recipient or by the recipient on himself or another.'

Under this provision, Respondent had a duty to report M.G.'s activities.  Clearly, there was a risk of serious physical, mental injury or disease or even death to M.G. or any of the minors with whom he may have engaged in sex.  This point was bolstered by both Dr. Henry and Dr. Marley.  Respondent's and his experts' argument that reporting such information might have jeopardized the relationship with M.G. was unconvincing.  Dr. Marley emphasized that even if there were a risk of jeopardizing the relationship, it was outweighed by the other risks facing M.G. and other individuals.  Indeed, it seems that Respondent's argument is more concerned with being well-liked by the patient than in doing things in the patient's best interest or the public's best interest."  

The ALJ recommended that plaintiff's license be suspended for 120 days and that he be placed on probation for an additional two-year period.

The Board subsequently issued both a "Rationale for Deviation from the Recommendation Issued by the Administrative Law Judge" and a "Findings of Fact, Conclusions of Law and Recommendation to the Director."  The Board agreed with the ALJ's determination that the Department proved by clear and convincing evidence that plaintiff violated sections 19(1)(e) and (f) of the Act, by manifesting professional incompetence and engaging in malpractice in the treatment of M.G.  However, the Board rejected the ALJ's finding that the Department proved by clear and convincing evidence that plaintiff engaged in dishonorable, unethical or unprofessional  conduct of a character likely to deceive, defraud or harm the public; or that plaintiff had a physical or mental disability under sections 19(1)(i) and (r) of the Act.  The Board recommended that plaintiff's license be suspended for 60 days and that he be placed on probation for a two-year period.

Plaintiff filed exceptions to the Board's report and recommendation and a motion to reconsider and for rehearing.  On July 31, 2002, the Director of the Department denied plaintiff's motion for reconsideration and rehearing after finding that plaintiff failed to allege any new evidence to warrant relief.  The Director also adopted the Board's findings of fact, conclusions of law and recommendation.  Plaintiff's complaint for administrative review of that determination was denied by the circuit court.

II. ANALYSIS

A.  Plaintiff's Claim that the Department's Determination is Clearly Erroneous

On appeal, plaintiff first contends that the Department's determination that he violated the Act by exhibiting professional incompetence and committing malpractice is clearly erroneous.  Plaintiff specifically argues that the evidence failed to show that he instructed M.G. regarding sexual activity, that he encouraged M.G.'s sexual activity or that he had a duty to report M.G.'s sexual activity. 

"An administrative agency's factual findings are deemed to be 
prima
 
facie
 true and correct and may be set aside only if they are against the manifest weight of the evidence."  
Anderson v. Department of Professional Regulation
, 348 Ill. App. 3d 554, 560 (2004).  "A 
de
 
novo
 standard of review is applied to findings on questions of law."  
Anderson
, 348 Ill. App. 3d at 560.  "
Where, as in [this case], the case involves an examination of the legal effect of a given set of facts, it involves a mixed question of law and fact, and the administrative agency's decision will be affirmed unless clearly erroneous."  
Anderson
, 348 Ill. App. 3d at 560; 
City of Belvidere v. Illinois State Labor Relations Board
, 181 Ill. 2d 191, 205 (1998).  "A decision will be deemed clearly erroneous only where the reviewing court, based on the entire record, is ' "left with the definite and firm conviction that a mistake has been committed. [Citations.]" ' "  
Anderson
, 348 Ill. App. 3d at 560.

Here, the Director of the Department determined that plaintiff violated sections 19(1)(e) and (f) of the Act by manifesting professional incompetence and engaging in malpractice in the treatment of M.G.  The Director's determination was based on findings that plaintiff instructed M.G. regarding sexual activity, encouraged M.G.'s sexual activity and failed to report M.G.'s sexual activity.  For reasons we explain later, we first address plaintiff's failure to report M.G.'s sexual activity.

1.  Plaintiff's Claim That the Record Does Not Support the Department's Finding That He Violated the Act By Not Reporting the Minor's Sexual Activity

Plaintiff contends that the record does not support the Department's finding that his failure to report M.G.'s sexual activity to either his parents or probation officer constituted malpractice and professional incompetence in violation of the Act.  Rather, plaintiff contends that he had a duty not to disclose such information under the Illinois Mental Health and Developmental Disabilities Confidentiality Act (Confidentiality Act) (740 ILCS 110/11(ii) (West 2002)), where there was no clear imminent harm and reporting would have been detrimental to his relationship with M.G.  

Section 11 of the Confidentiality Act (740 ILCS 110/11 (West 2002)) provides in pertinent part:

"Records and communications 
may
 be disclosed: 

(i) in accordance with the provisions of the Abused and Neglected Child Reporting Act; 

(ii) when, and to the extent, a therapist, 
in his or her sole discretion
, determines that disclosure is necessary to initiate or continue civil commitment proceedings under the laws of this State or to otherwise protect the recipient or other person against a clear, imminent risk of serious physical or mental injury or disease or death being inflicted upon the recipient or by the recipient on himself or another[.]" (Emphasis added.) 740 ILCS 110/11(i),(ii) (West 2002).

Both the ALJ and the Director determined that pursuant to this section of the Confidentiality Act, plaintiff had a duty to report M.G.'s sexual activities where there was a risk of serious physical, mental injury, disease or death to M.G. or any of the minors with whom M.G. may have engaged in sex.  In doing so, the Director rejected plaintiff's contention that reporting such information may have jeopardized plaintiff's relationship with M.G. 

Both Dr. Henry and Dr. Marley testified that plaintiff had a duty to notify M.G.'s parents and probation officer about his sexual activities.  Both doctors also testified that M.G.'s sexual activity posed numerous risks to himself and the other adolescents involved, including perforation of the colon, infection, contracting AIDS and psychological damage.  In response, plaintiff urged reliance on the testimony of seven experts, all of whom agreed that plaintiff delivered appropriate care to M.G. and that plaintiff did not have a duty to report M.G.'s sexual activity.  However, plaintiff's expert Dr. Rosenfeld did testify that plaintiff had an obligation to notify M.G.'s probation officer if M.G.'s activities were a violation of probation.  Dr. Levin also testified that M.G.'s parents should have been involved if M.G.'s relationship was exploitive, and acknowledged that the sexual relationship may have ended earlier if plaintiff had notified M.G.'s probation officer.  Based on this evidence, the Department argues that the Director's determination was not clearly erroneous where M.G.'s activities entailed a serious risk of harm which would give rise to a therapist's duty to disclose such behavior.  

Both below and on appeal, the parties focused on whether section 11(ii)'s provision that a communication may be disclosed under some circumstances, in the therapist's sole discretion, may provide a basis for finding that a licensed social worker committed malpractice and professional incompetence.  740 ILCS 110/11(ii) (West 1998).

However, neither party addressed whether plaintiff was obligated to report M.G.'s sexual activities to the Department of Children and Family Services pursuant to the Abused and Neglected Child Reporting Act (Reporting Act) (325 ILCS 5/1 
et
 
seq
. (West 1998)).  Section 11(i) of the Confidentiality Act specifically provides that "Records and communications may be disclosed:    (i) in accordance with the provisions of the Abused and Neglected Child Reporting Act."  740 ILCS 10/11(i) (West 1998). Section 4 of the Reporting Act 
provides in pertinent part:

"Any physician, resident, intern, hospital, hospital administrator and personnel engaged in examination, care and treatment of persons, *** social worker *** probation officer, *** or child care worker having reasonable cause to believe a child known to them in their professional or official capacity may be an abused child or a neglected child shall immediately report or cause a report to be made to the Department [of Children and Family Services]. *** The privileged

quality of communication between any professional person required to report and his patient or client shall not apply to situations involving abused or neglected children and shall not constitute grounds for failure to report as required by this Act."  325 ILCS 5/4 (West 1998).

Section 4.02 of the Reporting Act provides in pertinent part: 

"Any other person required by this Act to report suspected child abuse and neglect who willfully fails to report such shall be guilty of a Class A misdemeanor."  325 ILCS 5/4.02 (West 1998).

Section 3 of the Reporting Act 
reads in pertinent part:

"'Child' means any person under the age of 18 years, unless legally emancipated by reason of marriage or entry into a branch of the United States armed services. 

***

'Abused child' means a child whose parent or immediate family member, or any person responsible for the child's welfare ***. 

   * * *

(c) commits or allows to be committed any sex offense against such child, as such sex offenses are defined in the Criminal Code of 1961, as amended, and extending those definitions of sex offenses to include children under 18 years of age.

* * *

'Person responsible for the child's welfare' means the child's parent *** or any person who came to know the child through an official capacity or position of trust, including but not limited to health care professionals ***."  325 ILCS 5/3 (West 1998).

In 
People v. McKean
, 94 Ill. App. 3d 502 (1981), the court addressed predecessor versions of the Confidentiality Act and the Reporting Act.  In that case, the defendant went to the Sinnissippi Health Clinic and sought mental health counseling.  After defendant's initial interview with a hospital social worker, Steven McDowell, McDowell informed the police and prosecuting authorities that defendant had admitted to engaging in oral sex with his 6- and 10-year-old stepdaughters.  Defendant subsequently pled guilty to two counts of aggravated incest and received the maximum sentence of seven years in prison.  The trial court denied defendant's subsequent motion to withdraw his plea of guilty and defendant appealed this denial.

The appellate court held:

"Essentially, defendant claims that his constitutional rights were violated when the social worker to whom he admitted the incestuous acts informed the authorities of his conduct.  This claim is bottomed on the existence and application of either a 'social-worker-patient privilege' or a 'therapist-patient privilege.'  Even if such a privilege did otherwise exist under these circumstances, it is not applicable where as here abused or neglected children are involved.  The Abused and Neglected Child Reporting Act states in relevant part as follows:

'Any *** social worker *** having reasonable cause to believe a child known to [him] in [his] professional or official capacity may be an abused child or a neglected child shall immediately report or cause a report to be made to the Department [of Children and Family Services]. *** The privileged quality of communication between any professional person required to report and his patient or client shall not apply to situations involving abused or neglected children and shall not constitute grounds for failure to report as required by this Act.' [Citation.]

Under the statute quoted above not only was any communication privilege that might exist between the defendant and McDowell inapplicable but also McDowell had an affirmative duty to report the defendant's conduct to the Department of Children and Family Services and could not raise privileged communications as grounds for failure to so report."  
McKean
, 94 Ill. App. 3d at 505.   
 
  

In 
People v. Morton
, 188 Ill. App. 3d 95 (1989), the court, similarly, addressed predecessor versions of the Confidentiality Act and the Reporting Act.  There, the defendant was convicted of sodomizing his eight-year-old son.  On appeal, the appellate court held:

"Defendant's complaint that Jeanne Hamilton, the St. John's counselor with whom he conferred, should not have been permitted to testify as to admissions he made to her is based upon the provisions of section 10(a) of the Mental Health and Developmental Disabilities Confidentiality Act (Confidentiality Act) [citation], which states that, except as therein provided, 'therapists' and 'recipients' have 'the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications' in court proceedings and before various other situations.  [Citation.]  The term 'therapist' includes social workers [citation] and the word 'recipient' includes a person receiving mental health services [citation].    However, section 4 of the Abused and Neglected Child Reporting Act (Reporting Act) requires a wide variety of people involved in providing various types of health and social services, including social workers, to report suspected cases of child neglect or abuse to the Illinois Department of Children and Family Services.  [Citation.]  Section 4 further states in part:

'The privileged quality of communication between any professional person required to report and his patient or client shall not apply to situations involving abused or neglected children and shall not constitute grounds for failure to report as required by this Act.' [Citation.]

    * * * 

 [A]s stated in 
McKean
, *** the express language of section 4 of the Reporting Act provided both for the creation of a duty upon the social worker to report child abuse and also to negate any privilege to the communication between the parties."  
Morton
, 188 Ill. App. 3d at 104-06. 

While 
McKean
 and 
Morton
 both involved admissions made by adults to social workers and the instant case involves admissions made by a juvenile to a social worker, this does not change the analysis.

In 
In re T.W.
, 291 Ill. App. 3d 955 (1997), the court considered the constitutionality of section 12-15(b) of the Criminal Code: "The accused commits criminal sexual abuse if the accused was under 17 years of age and commits an act of sexual penetration or sexual conduct with a victim who was at least 9 years of age but under 17 years of age when the act was committed."  720 ILCS 5/12-15(b) (West 1996).  This is the statute upon which the ALJ relied in this case when she found that M.G. was committing a criminal offense when he engaged in consensual sex with "B." and "R.," both of whom were under 17 years of age.

In rejecting the 16-year-old defendant's argument that section 12-15(b) was unconstitutionally vague where the victim was 15 years of age, the appellate court in 
In re T.W.
 held: "where, as here, two minors engage in a consensual sexual act, the statute may validly be applied to prosecute both minors on the basis that each is the victim of the other."  
In re T.W.
, 291 Ill. App. 3d at 960.  Also, "section 12-15(b) makes it clear that its overall purpose is to protect children who are 9 to 16 years old from the consequences of premature sexual experiences."  
In re T.W.
, 291 Ill. App. 3d at 961. 

Further, section 3(c) of the Reporting Act defines "abused child" as a child whose parent or any person responsible for the child's welfare "commits or allows to be committed any sex offense against such child, as such sex offenses are defined in the Criminal Code of 1961, as amended, and extending those definitions of sex offenses to include children under 18 years of age."  325 ILCS 5/3 (West 1998).

Under the holding in 
In re T.W.
 and the definition of "abused child" in section 3 of the Reporting Act, M.G., "B." and "R." could all be considered to be abused children.  This fact could then trigger the requirements of the Reporting Act, compelling plaintiff to report M.G.'s sexual activity to the Department of Children and Family Services.  Whether M.G., "B.," or "R." meets the definition of "abused child" in section 3 of the Reporting Act involves an examination of the legal effect of a given set of facts; therefore, it involves a mixed question of law and fact.  We review the administrative agency's decision under the "clearly erroneous" standard.  
Anderson
, 348 Ill. App. 3d at 560.  Consequently, the Department  should consider this issue before we attempt to rule on it.  This is particularly appropriate in the instant case where neither of the parties addressed this issue below and the evidence at issue was so sharply divided.

In making its determination that plaintiff engaged in malpractice and manifested professional incompetence, the Department relied on the ALJ and Board's findings that plaintiff encouraged M.G. to engage in sexual activity, that plaintiff gave improper advise to M.G. regarding sexual technique and that plaintiff violated his duty to report M.G.'s sexual activity to the proper people.  Because the Department found that plaintiff engaged in malpractice and professional incompetence based on all three of these bases and we are reversing and remanding its finding relating to plaintiff's duty to report, we vacate the determination of malpractice and professional incompetence.  We will address the Department's findings that plaintiff encouraged M.G. to engage in sexual activity and gave M.G. improper advice after the case returns to this court for review of whatever decision is made below as to whether plaintiff had a duty to report M.G.'s sexual activity under the Reporting Act.

We remand this matter to the Department for a determination whether M.G., "B.," or "R." is to be considered an "abused child" under section 3 of the Reporting Act.  If the Department finds that any of them are, the Department is to then determine whether the Reporting Act required plaintiff to report M.G.'s sexual activities to the Department of Children and Family Services.  On remand, the Department is further directed to consider whether the parties should be allowed to present new evidentiary matters in addition to legal memoranda and argument restricted to whether the Reporting Act applies and what effect, if any, it has.  As we are remanding this matter for reconsideration, we now address plaintiff's procedural claims.

B.  Plaintiff's Claim That the Department Committed Numerous Procedural Errors Warranting Reversal of the Department's Determination

1.  Plaintiff's Claim That the Department Erroneously Admitted and Relied on Hearsay Evidence

Plaintiff contends that the Department erred by allowing Johnson and M.G.'s mother to testify regarding hearsay statements that M.G. made to them.  Plaintiff specifically complains that Johnson and M.G. provided testimony that M.G. stated that plaintiff had instructed him that it was "ok" to engage in sexual activities with someone over eight years of age.  Plaintiff also contends that the Department erred by admitting Johnson's notes of the conversation she had with M.G.

The rules of practice before the Department of Professional Regulation provide:

"Hearsay is not admissible.  In addition to any other exceptions to the hearsay rule which exist in Illinois, a statement may be admitted if it has circumstantial guarantees of trustworthiness, and if the probative value of the statement outweighs any prejudice resulting from an inability to cross-examine the declarant."  68 Ill. Adm. Code §1110.220(b), as 

amended by 28 Ill. Reg. 7642 (eff. May 21, 2004). 

Generally, hearsay evidence is not admissible in an administrative proceeding.  
Abrahamson v. Illinois Department of Professional Regulation
, 153 Ill. 2d 76, 94 (1992).  
However, where there is sufficient competent evidence to support an administrative decision, the improper admission of hearsay testimony in the administrative proceeding is not prejudicial error.  
Abrahamson
, 153 Ill. 2d at 94. 

In the present case, plaintiff's own testimony and statements he made to Johnson and Dr. Henry essentially admitted the statements made by M.G.  Therefore, the admission of the statements made by M.G. to Johnson and his mother, even if error, did not prejudice plaintiff.  However, upon reconsideration, the Department should not consider M.G's statements to Johnson and his mother.

2.  Plaintiff's Claim that the Department Exceeded the Scope of Its Authority in Compelling a Physical and Mental Examination and Using Such Examination to Gather Evidence to Use in a Malpractice Case Against Him    

Plaintiff next contends that the Department improperly required him to submit to a mental and physical examination where the charge against him did not raise questions about his potential impairment.  Plaintiff also contends that the Department improperly used the examination process to build a malpractice case against him and violated his due process rights by not providing him with notice of the charges against him prior to the examination.

Section 19(5) of the Act provides that "the Board upon a showing of a possible violation may compel a person licensed to practice under this Act *** to submit to a mental or physical examination, or both, as required by and at the expense of the Department."  225 ILCS 20/19(5) (West 2002).  This section also  provides that "[t]he person to be examined may have, at his or her own expense, another physician of his or her choice present during all aspects of the examination."  225 ILCS 20/19(5) (West 2002).

In this case, M.G.'s probation officer filed a charge with the Department alleging that plaintiff had encouraged M.G.'s adolescent sexual activity and instructed M.G. on sexual technique.  As a result, there was a showing that plaintiff may have violated the Act, and the Department was therefore permitted to compel plaintiff to undergo a mental and physical examination.  225 ILCS 20/19(5) (West 2002).  Contrary to plaintiff's assertion, nothing in the Act requires that the charge against him specifically allege that he is mentally or physically impaired before he can be required to submit to an examination.

Defendant next argues that Dr. Henry improperly used the examination process to criticize the services that plaintiff provided to M.G. and to gather evidence to support the allegations of incompetence and malpractice.  Defendant specifically notes that Dr. Dinwiddie disagreed with Dr. Henry's examination process.  

However, pursuant to section 19(5) of the Act, the Department "may order the examining physician to present testimony concerning th[e] mental or physical examination."  225 ILCS 20/19(5) (West 2002).  Therefore, the fact that Dr. Henry provided testimony relating to the care that plaintiff provided to M.G., which was discussed in performing plaintiff's examination, did not make the examination improper.  In addition, section 19(5) provides that no information relating to the examination shall be excluded by reason of any common law or statutory privilege relating to communications between the licensee and examining physician.  225 ILCS 20/19(5) (West 2002).  Accordingly, nothing prevented the Department from offering Dr. Henry's testimony regarding his interview with plaintiff during which plaintiff described the treatment that plaintiff provided to M.G. and his assessment of that treatment.  

In addition, Dr. Dinwiddie's criticism of Dr. Henry's examination and assessment of plaintiff's treatment is an issue relating to the evaluation of evidence and credibility of witnesses that is reserved for the Director, as the trier of fact.  
Anderson
, 348 Ill. App. 3d at 561.

Finally, nothing in the Act required the Department to provide plaintiff with the allegations of his possible violation before he was ordered to undergo a mental or physical examination.  Plaintiff relies on 
Siddiqui v. Department of Professional Regulation
, 307 Ill. App. 3d 753 (1999), and 
Mathers v. Pollution Control Board
, 107 Ill. App. 3d 729 (1982), in support of his argument that he was entitled to notice of the allegations before the examination.  However, plaintiff's reliance on these cases in unconvincing.  In 
Siddiqui
, the appellate court determined that the formal disciplinary complaint was sufficient to apprise a physician of the charges against him.  Whereas, in 
Mathers
, the appellate court examined whether the published notice of a decision by the Illinois Pollution Control Board was sufficient notice.

In this case, 
the record shows that the Department did not file a formal complaint against plaintiff until June 15, 2000, nearly five months after the examination.  Plaintiff does not dispute that he received proper notice of the complaint and plaintiff also filed an answer to the complaint.  The charge in an administrative proceeding need only reasonably advise the respondent as to the charges so that the respondent will be able to intelligently prepare a defense.  
Abrahamson
, 153 Ill. 2d at 93.  Accordingly, plaintiff has not established a violation of his due process rights. 

The plain language of section 19(5) demonstrates that it was the intent of the legislature that information acquired during a physical or mental examination of a licensee would be considered by the Department in deciding whether to bring a charge against a licensee and would be admissible at any administrative proceeding.  225 ILCS 20/19(5) (West 2002).

     

3.  Plaintiff's Claim That the Department Did Not Follow Procedural Rules In Denying His Request to Subpoena Dr. Marley's Employment Records

Plaintiff next contends that the Department erred with respect to his request to subpoena Dr. Marley's employment records from the University of Illinois, in order to examine any possible bias Dr. Marley may have had against plaintiff, who was employed by that institution.  Plaintiff argues that the Director, rather than the Department's chief of prosecutions, was required to make the determination whether to issue the subpoena, and that the Director, not the ALJ, was required to conduct a hearing on a denial of a subpoena.  

Section 1110.140(a) of the Illinois Administrative Code (Code) (68 Ill. Adm. Code § 1110.140(a), as amended by 28 Ill. Reg. 7642 (eff. May 21, 2004)) provides that "[t]he Director or his delegate, will issue subpoenas."  Section 1110.140(b) of the Code provides that "[u]pon refusal by the Director to issue any subpoena, the registrant will be entitled to a hearing before the Director, to be conducted as a matter of record."  68 Ill. Adm. Code § 1110.140(b), as amended by 28 Ill. Reg. 7642 (eff. May 21, 2004).

We agree with plaintiff's argument that the Department erred by permitting the chief of prosecutions to deny plaintiff's subpoena and the ALJ to conduct the hearing on the refusal.  Upon reconsideration, the Director should decide whether to issue the subpoena.  If the Director refuses to issue the subpoena, plaintiff will be entitled to a hearing before the Director.
 

  4.  Plaintiff's Claim That the Department Failed to Show 

  That Each Member of the Board Reviewed the Transcript of the        Proceedings Before Making His or Her Individual Decision   Plaintiff finally argues that the Department failed to

establish that the members of the Board considered all of the evidence before making their recommendations to the Director.  Plaintiff argues that the members were not present throughout the proceedings and that the Board's statement that it reviewed the record was insufficient.

In 
Abrahamson
, our supreme court determined that "absent express statutory language to the contrary, agency members making the final decision need not be present when the evidence is taken, so long as they review the record of the proceedings."  
Abrahamson
, 153 Ill. 2d at 95.  Procedural due process is afforded where the administrative agency considers the evidence contained in the transcript of the proceeding and bases its decision theron.  
Pundy v. Department of Professional Regulation
, 211 Ill. App. 3d 475, 487 (1991).  

In this case, the Board stated that it reviewed the record prior to making its recommendation, and there is no evidence that the Board failed to review the entire record before rendering its determination.  Plaintiff's arguments and speculation are therefore unpersuasive.  
Pundy
, 211 Ill. App. 3d at 487.  

III.  CONCLUSION   

For the foregoing reasons, we reverse the decision of the circuit court upholding the Department's determination that plaintiff violated sections 19(1)(e) and (f) of the Act by manifesting professional incompetence and engaging in malpractice in the treatment of M.G.  We remand this matter to the Department for a determination whether M.G., "B.," or "R." is to be considered an "abused child" under section 3 of the Reporting Act and, if so, whether plaintiff was required, pursuant to the Reporting Act, to report M.G.'s sexual activities to the Department of Children and Family Services.  The Department is also directed to consider whether the parties should be allowed to present new evidentiary matters in addition to legal memoranda

and argument, restricted to the issue of whether the Reporting 

Act applies and what effect, if any, it has.

Reversed and remanded with directions.                

REID, P.J., and GREIMAN, J., concur.