In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-3175

RICHARD A. MOORE,

*Plaintiff-Appellant*,

*v.*

MUNCIE POLICE AND FIRE MERIT COMMISSION,
MIKE SZAKALY, DAVID EILER, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 00 C 177—**Richard L. Young**, *Judge*.

ARGUED MAY 14, 2002—DECIDED DECEMBER 5, 2002

Before COFFEY, MANION, and EVANS, *Circuit Judges*.

COFFEY, *Circuit Judge*. In the spring of 1996, Richard A. Moore made application for employment with the Muncie, Indiana, Fire Department. On May 1 of that year, at the age of thirty-six years old, Moore completed his written application for employment with the Fire Department. He then surmounted the Department's first required hurdle, the agility test. He also passed the written aptitude test, and he was successful in his oral interview. On November 7, 1996, after Moore had completed those three initial steps in the application process, the Institute for

Public Safety Personnel[1] sent an eligibility list containing Moore's name to the Muncie Police and Fire Merit Commission (Commission). The Commission is charged with overseeing the application process and nominating candidates for appointment to the Muncie Fire Department.

Two years later, on November 30, 1998, Moore received a written "Conditional Offer of Employment" from the Department, and the Commission forwarded his application for employment to the Muncie Firefighter's Pension Board for further review. The Pension Board reviews applications and certifies that the applicant meets the requirements for membership in the 1977 Pension and Disability Fund (the "Pension Fund"), which is a condition precedent for employment with the Muncie Fire Department pursuant to state law. *See* Indiana Code § 36-8-3-21(b).

Under Indiana law, an individual may not be hired by a municipal fire department as a firefighter (after May 31, 1985) unless he meets the conditions for membership in the Pension Fund.[2] *See* Indiana Code § 36-8-3-21(b). But Indiana law also provides that only individuals younger than thirty-six years old may become a member of the Pension Fund. *See* Indiana Code § 36-8-8-7(a)(2). Therefore, no individual making application after he has turned thirty-six years old may be hired as a Muncie fire-

---

[1] The Merit Commission retains the services of the Institute for Public Safety Personnel to administer and grade the various tests in the firefighter application process and then to compile an eligibility list to submit to the Merit Commission. The record does not indicate where the Institute is located.

[2] "An individual may not be employed by a unit . . . as a member of the unit's fire department or as a member of the unit's police department unless the individual meets the conditions for membership in the 1977 fund." Indiana Code § 36-8-3-21(b).

fighter. On December 1, 1998, the Pension Board determined that Moore—who was then beyond the age of thirty-six—was too old to become a member of the Pension Fund. Thus, the Commission could not appoint him as a Muncie firefighter under Indiana law.

On January 28, 2000, Moore filed suit in the Southern District of Indiana, alleging that the Commission's refusal to hire him violated 42 U.S.C. § 1983, depriving Moore of his constitutional right to due process. However, the court found that Moore did not have a property interest in securing a position as a firefighter for the City of Muncie, Indiana, and the judge granted Muncie's motion for summary judgment. Moore appealed that decision, and we affirm.

## I.  Factual Background

### A.

The Muncie Police and Fire Merit Commission plays an integral role in the City of Muncie's public administration. The Commission is responsible for hiring, disciplining, and discharging police officers and firefighters, as well as for promulgating policies and procedures within the police and fire departments themselves. In fulfilling this responsibility, the Commission contracts with the Institute for Public Safety Personnel to administer and grade various tests in the firefighter application process and to compile an eligibility list for submission to the Commission. In turn, the Commission selects new firefighters from the Institute's list. When hiring a new employee, however, the Commission must also secure the approval of the Muncie Firefighter Pension Board, which is charged with voting on matters such as the acceptance of new employees into the Pension Fund.

Although Indiana law requires that applicants for the position of firefighter be under the age of thirty-six, from

January 1, 1994 through September 30, 1996 the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA), forbade any employer from refusing to hire an individual because of the individual's age. Thus Indiana Code §§ 36-8-8-7(a)(2) and 36-8-3-21(b), which together dictate that only individuals who are less than thirty-six (36) years of age can apply to be firefighters, were preempted by federal legislation, and they were ineffective from January 1, 1994. However, on September 30, 1996 Congress amended the ADEA and removed the federal prohibition of the age limitations retroactive to December 31, 1993. *See* H.R. 3610, Pub. L. 104-208, Div. A, Title I, § 101(a), Sept. 30, 1996, 110 Stat. 3009-23. As a result, Indiana municipalities could comply with the age requirements of Indiana Code § 36-8-8-7(a)(2) when handling applications dating back to December 31, 1993 without violating the Federal ADEA requirements.

In light of the retroactive appeal, the Public Employees' Retirement Fund Board (PERF)[3] submitted a letter to the Muncie Pension Board on October 24, 1997, stating that PERF would follow a "temporary transition policy." The letter stated that active employees of the Department, or potential employees who had received a conditional offer of employment on or before September 30, 1996, would continue to be processed without regard to the age limitation. It also provided that applicants who had not received a conditional offer of employment on or before September 30, 1996, would be denied admission to the Pension Fund pursuant to Ind. Code § 36-8-8-7. Thus, the Board *would not* disqualify those applicants who had reached thirty-six years of age and over and who had completed all steps in the job application process

---

[3] The Indiana Board of Trustees of the Public Employees' Retirement Fund has final say on the acceptance of newly hired employees into the pension fund.

and had received a conditional offer of employment prior to September 30, 1996. And since Moore had not yet received his conditional offer of employment prior to that date,[4] he failed to comply with the thirty-six year age limit reinstated by the transition policy.

B.

We now turn to the facts surrounding Moore's application to become a Muncie firefighter. As stated previously, Moore began the application process in May 1996, less than one year after he turned thirty-six years of age. Moore successfully completed the required agility test on June 19, 1996, and the written aptitude test on July 20, 1996. He sat for an oral interview on September 23, 1996, and approximately six weeks later, Moore was placed on the fireman's eligibility list with a ranking of seventh (7th).

On February 7, 1997, a few months after Moore was placed on the eligibility list and before he received any offer of employment, the Merit Commission removed Moore from the eligibility list because of his age. The Commission decided that the recently amended ADEA removed the federal prohibition on age limitations for firefighters and thus Indiana Code §§ 36-8-3-21(b) and 36-8-8-7(a)(2) required that Moore *be less than thirty-six years* of age to qualify for membership in the Pension Fund, which he was not. However, on October 16, 1997, R. Thomas Parker, the director of the Pension Fund, wrote a letter to the Commission's attorney, stating:

> We have received evidence that Mr. Moore had started the applicant process with the Muncie Fire Depart-

---

[4] Moore did not receive a conditional offer of employment until November 30, 1998.

ment prior to the changes in the federal law regarding A.D.E.A. on September 30, 1996.

As part of our A.D.E.A. transition policy, we will review Mr. Moore's application for membership in the 1977 Fund when we receive that document from the local board. Our policy regarding this issue has changed since the date of the letter to Mr. Moore on February 7, 1997 from the Muncie Police and Fire Merit Commission.

We wish to make clear that Parker's letter was barren of any promise or any reference to the fact that Moore qualified for membership in the Pension Fund because of the transition policy. Instead, Parker's letter suggested that the PERF would only _review_ Moore's application in order that it might determine whether the transition policy allowed him to become a member of the Pension Fund despite the fact that his age would otherwise disqualify him. On October 24, 1997, Moore received a letter notifying him, in response to the PERF's transition policy, that the Commission had reinstated him, for the moment, on the applicant eligibility list, with a ranking of one.[5]

While Moore waited for an offer of employment, the PERF clarified its transition policy to the Commission. In an April 29, 1998 letter, the PERF informed the Commission that:

Individuals who were actively employed by a department or who had received a written conditional offer of employment from the hiring authority on or before September 30, 1996, would continue to be processed without regard to the age thirty-six (36) requirement.

---

[5] Moore's rank on the eligibility list rose because all of the applicants who had previously been ranked ahead of him had been hired during the time period that Moore had been removed from the list.

Individuals who had not received a conditional offer of employment on or before September 30, 1996, would be denied entry into the 1977 fund pursuant to Indiana Code § 36-8-8-7.

As we made clear above, Moore did not receive a conditional offer of employment until November 30, 1998. Thus, his application did not qualify for approval under the transition policy. The Pension Board met on December 1, 1998, to review Moore's application to the Pension Fund, and determined that Moore was "too old to become a member of the 1977 Fund," having reached the age of 36 before he received a conditional offer of employment.

Moore then filed this suit under 42 U.S.C. § 1983, alleging that the Board's refusal to appoint him to the Pension Fund deprived him of a constitutionally protected property interest in employment as a City of Muncie, Indiana firefighter. The trial court granted summary judgment in favor of the defendants, City of Muncie, et al., ruling that Moore had failed to establish that he had a property interest in *prospective* employment with the Muncie Fire Department. Moore appeals, arguing that the trial court committed error because the transition policy created a "mutually explicit understanding" between him and the defendants and thus he was entitled to be hired as a Muncie firefighter.

## II.  Analysis

We review *de novo* the trial judge's grant of summary judgment. *Wright v. Illinois Dep't of Corr.*, 204 F.3d 727, 729 (7th Cir. 2000). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986). We view the record and all justifiable inferences drawn from it in the light most favorable to the party against whom judgment was entered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In order to succeed in an action based upon 42 U.S.C. § 1983, a plaintiff must establish that (1) "the conduct complained of was committed by a person acting under color of state law"; and (2) that "this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Townsend v. Vallas*, 256 F.3d 664, 669 (7th Cir. 2001) (citations omitted). In this case, Moore alleged that when the Merit Commission denied his application to the Pension Fund and removed his name from the eligibility list he was deprived of a protected property interest—that of prospective employment with the Muncie Fire Department—without due process of law.

Thus, Moore's federal constitutional claim turns upon whether he had a property right in prospective employment in the Muncie Fire department. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *Board of Regents v. Roth*, 408 U.S. 564, 576-78 (1972). If, in fact, Moore does have a legal right to employment with the City of Muncie, Indiana, as a firefighter, then the Merit Commission could not remove him from the eligibility list without a due process hearing. *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 11-12 (1978) (stating that "due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest") (citations omitted); *see also Ulichny v. Merton Cmty. Sch. Dist.*, 249 F.3d 686, 699 (7th Cir. 2001); *Fittshur v. Village of Menomonee Falls*, 31 F.3d 1401, 1405 (7th Cir. 1994). We bear in mind that property interests are not created by the United States Constitution. *Ulichny*, 249 F.3d at 699-700. "Rather they are created and their dimensions are defined by existing

rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577. Further, a property interest must be based on more than merely an "abstract need or desire for it." *Roth*, 408 U.S. at 578.

We do not accept Moore's untenable claim that he has a property interest in *prospective* employment with the Muncie Fire Department. In order to create a justifiable and reasonable expectation of employment, and thereby establish a property interest, there must be a "mutually explicit understanding" between the parties. *Crim v. Board of Educ. of Cairo Sch. Dist. No. 1*, 147 F.3d 535, 545 (7th Cir. 1998). But Moore was never hired and thus his allegation that he had a mutually explicit understanding with the Commission regarding future employment as a Muncie firefighter is without merit. We have previously held that "[t]o recognize a 'property' interest for an appointment to a classified position in the realm of public employment would drastically extend the scope of the due process clause" and we refused to make that extension. *Petru v. City of Berwyn*, 872 F.2d 1359, 1363 (7th Cir. 1989); *see also United States v. City of Chicago*, 798 F.2d 969, 974 (7th Cir. 1986) ("We need not decide now whether an unconditional agreement for *prospective* employment gives rise to a protectable property right . . . .") We have also previously held that an employee has no property interest in a *prospective* promotion, even when placed on an eligibility or ranking list. *See, e.g.*, *United States v. City of Chicago*, 869 F.2d 1033, 1038 (7th Cir. 1989); *Thomas v. Board of Examiners*, 866 F.2d 225, 227 (7th Cir. 1989) (per curiam); *Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir. 1985).

Despite the weight of the precedent suggesting that persons do not have property interests in prospective employment, Moore argues that the transition policy set

forth by the PERF created a "mutually explicit under-standing" between him and the Commission that he would not be removed from the eligibility list on account of his age. Moore's argument is unconvincing for several reasons.

Initially, we do not agree with Moore's assertion that the transition policy created a "mutually explicit under-standing" and thus created a property interest for him, as Indiana law requires that public employers' policies must be adequately promulgated in order to create property rights. *See Lawshe v. Simpson*, 16 F.3d 1475, 1483 (7th Cir. 1994). Moore offered no evidence that the PERF transition policy was promulgated in any way. Moore asserts, with scant factual support, that the transition policy was adequately promulgated because the Merit Commission referenced the policy in a letter that informed him he had been reinstated on the applicant eligibility list. But Moore's letter only briefly mentions that the PERF had "changed their policy," failing to name, much less describe or set forth the nature and substance of that policy. Indeed, as the trial judge correctly observed, Moore's only evidence of the nature and terms of the transition policy is contained within letters that he was never intended to receive. Moore has failed to direct us to even one iota of evidence in the record to demonstrate that the PERF promulgated the transition policy. Thus, we agree with the trial court's determination that the transition policy fell short of creating a mutually explicit understanding that gave rise to a property interest in prospective employment with the Muncie Fire Department.

Moore's claim fails for yet another reason. Even if we were to hold that the transition policy created a mutually explicit understanding between the parties, the policy does not apply to Moore. Under the plain language of the transition policy, Moore is ineligible for membership in the Pension Fund. The transition policy, as described in documents Moore introduced into the record, states that

"individuals who . . . received a written conditional offer of employment from the hiring authority on or before September 30, 1996, would continue to be processed without regard to the age thirty-six requirement." The policy further stated that those "[i]ndividuals who had not received a conditional offer of employment on or before September 30, 1996, would be denied entry into the Pension Fund pursuant to IC 36-8-8-7." The Muncie Fire Department did not extend Moore a conditional offer of employment until *November 30, 1998.* In attempting to circumvent the plain language of the transition policy, Moore unconvincingly argues that he had completed all the steps in the application process before September, 30, 1996. The date Moore completed the various steps in the application process is not relevant. The transition policy was clear in mandating that Moore receive a *written conditional offer of employment before September 30, 1996*, to fall within the transition policy's umbrella of protection. He did not. Indeed, Moore was not even placed on the eligibility list for hire until November 7, 1996—more than a month later than the end of the grace period offered under the transition policy.

Moore has failed to demonstrate that he had a property interest in future employment with the Muncie Fire Department, and therefore his 42 U.S.C. § 1983 claim must fail. The judgment of the trial court is AFFIRMED.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*