# Illinois Official Reports

## Appellate Court

*Chamberlain v. Civil Service Comm'n*, 2014 IL App (2d) 121251

| | |
|---|---|
| Appellate Court Caption | HENRY CHAMBERLAIN, Plaintiff-Appellant, v. THE CIVIL SERVICE COMMISSION OF THE VILLAGE OF GURNEE, ILLINOIS; GEORGE ILER, LORI HUBBARTT, and TY BONDS, Commission Members; FRED N. FRIEDL III, Fire Chief of the Village of Gurnee, Illinois; JOHN KAVANAUGH; JAMES GRAMER; and THOMAS DRATHS, Defendants-Appellees (Colleen F. O'Keefe; James Wilson, President of the Gurnee Firefighters Union I.A.F.F. Local 3598; and The Gurnee Firefighters Union I.A.F.F. Local 3598, Defendants). |
| District & No. | Second District<br>Docket No. 2-12-1251 |
| Filed | February 19, 2014 |
| Rehearing denied | May 9, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly affirmed the decision of a village civil service commission to pass over plaintiff for a promotion to the rank of lieutenant in the village fire department, notwithstanding the fact that he was the highest-ranking person on the promotion eligibility list, since the collective bargaining agreement and the Fire Department Promotion Act gave the commission the authority to pass over plaintiff if it concluded that he had demonstrated substantial shortcomings in work performance or engaged in misconduct affecting the performance of his duties, and in plaintiff's case, the consideration of hearsay evidence of his shortcomings and misconduct did not violate his right to procedural due process, the finding that such circumstances existed was not against the manifest weight of the evidence, and the decision to pass over him was not clearly erroneous. |

| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 12-MR-818; the Hon. Jorge L. Ortiz, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas F. McGuire, of Thomas F. McGuire & Associates, Ltd., of Long Grove, for appellant. |
| | Terrence T. Creamer and Mark S. Wilkinson, both of Franczek Radelet, P.C., of Chicago, for appellees Civil Service Commission of the Village of Gurnee, Ty Bonds, Lori Hubbartt, and George Iler. |
| | Thomas G. Draths and Clare J. Quish, both of Schuyler, Roche & Crisham, P.C., of Chicago, for other appellees. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion. Presiding Justice Burke and Justice Jorgensen concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Henry Chamberlain, is a firefighter-paramedic with the Village of Gurnee fire department who was passed over for promotion to lieutenant. This was despite the fact that plaintiff was the highest-ranking person on the promotion eligibility list for that rank. Pursuant to section 20(d) of the Fire Department Promotion Act (Promotion Act) (50 ILCS 742/20(d) (West 2010)) and article 18 of the collective bargaining agreement (CBA) between defendants Gurnee and the Gurnee Firefighters Union I.A.F.F. Local 3598, defendant Civil Service Commission of the Village of Gurnee (Commission) passed over plaintiff after the fire department presented evidence regarding alleged work-performance shortcomings and incidents of misconduct.

¶ 2    Plaintiff appealed the decision to the Lake County circuit court, which affirmed the decision. For the reasons stated herein, we affirm.

¶ 3                              I. BACKGROUND

¶ 4    Plaintiff has been a firefighter-paramedic with the Gurnee fire department since 1994. In May 2010, the Commission, an administrative agency of the Village of Gurnee, established a promotion eligibility list for the promotion of firefighters to the rank of lieutenant. The promotion list was in effect from May 21, 2010, through May 22, 2012. In the spring of 2012, plaintiff was the highest-ranking person on the list and therefore was next in line for a promotion. However, in an April 20, 2012, finding and decision by the Commission, plaintiff

was passed over for promotion. Defendant James Gramer, second on the list, was promoted instead.

¶ 5 The Commission derives its authority to pass over a firefighter on the promotion list from the CBA, dated May 1, 2011. Article 18 reads, in part:

"[A]ll promotions made off that list will be made in order of finish on the final list. However, the Civil Service Board shall have the right to pass over that person and appoint the next highest ranked person on the list if the Board has reason to conclude that the highest ranking person has demonstrated substantial shortcomings in work performance or has engaged in misconduct affecting the person's ability to perform the duties of the promoted rank since the posting of the promotion list."

The language of the CBA tracks the language of section 20(d) of the Promotion Act, which reads, in part:

"[T]he appointing authority shall have the right to pass over that person and appoint the next highest ranked person on the list if the appointing authority has reason to conclude that the highest ranking person has demonstrated substantial shortcomings in work performance or has engaged in misconduct affecting the person's ability to perform the duties of the promoted rank since the posting of the promotion list." 50 ILCS 742/20(d) (West 2010).

Thus, under provisions of both the CBA and the Promotion Act, the highest-ranking candidate on the promotion list is selected for a promotion unless the Commission finds that the candidate demonstrated substantial work-performance shortcomings or engaged in misconduct affecting his or her ability to perform in the promoted rank. The Commission passed over plaintiff pursuant to these provisions.

¶ 6 The Commission's investigation into plaintiff's performance formally began on or about March 16, 2012, when defendant Thomas Draths, an attorney representing the Gurnee fire department, notified the Commission that plaintiff was the highest-ranking person on the promotion list and that the fire department believed that he had demonstrated substantial shortcomings in his work performance and/or had engaged in misconduct affecting his ability to perform the duties of a lieutenant. The fire department's notification of charges and allegations included a March 6, 2012, transcript of plaintiff's administrative statement regarding four alleged incidents of misconduct (occurring, respectively, on or about January 23, January 24, January 25, and February 27, 2012) and statements from firefighters and paramedics regarding plaintiff's conduct during three of these incidents. In response to the notification, plaintiff's counsel, Thomas McGuire, wrote to the Commission on March 23, 2012, to request an evidentiary hearing, asserting that plaintiff had a property interest in having his name on the promotion list, thus entitling him to procedural due process, and generally asserting that the Commission should not take any action against plaintiff. The Commission declined to hold a hearing, but on April 5, 2012, it did notify plaintiff and Draths that it would hold a special meeting on April 10, pursuant to its rules and regulations and section 20(d) of the Promotion Act (50 ILCS 742/20(d) (West 2010)), to determine whether plaintiff engaged in misconduct or demonstrated shortcomings in work performance. Counsel for plaintiff responded to the notice with an April 9, 2012, letter, in which he argued, in pertinent part, that plaintiff should not be removed from the promotion list–an action that the Commission would

not be taking in any event, since the decision to be made was only whether to pass over plaintiff on the list–and that statements provided to the Commission by the fire department were inadmissible hearsay.

¶ 7        The fire department's notification alleged the following four incidents of misconduct and/or substantial work-performance shortcomings, all of which occurred while plaintiff was on duty. The first alleged incident was on January 23, 2012, when plaintiff responded to a call from a construction site at 401 Hunt Club Road in Gurnee. An injured person had fallen approximately 25 to 30 feet. In the presence of the injured person, plaintiff's coworkers, and other Gurnee personnel, plaintiff said, " 'Were you the one who was up on the scaffolding that said 'Bears suck'? That's what you get for being a Packers' fan.' "

¶ 8        The second alleged incident occurred on January 24, 2012. Plaintiff was on the scene of a car accident where the car was on its side with two occupants within. In the presence of civilians, plaintiff referred to his coworkers as, " 'You idiots! You dumbasses!' " In the notification, no context was given for the derisive words.

¶ 9        The third alleged incident occurred on January 25, 2012. While en route to and at Condell Medical Center, plaintiff allegedly responded unprofessionally when communicating with a nurse who was asking for an abbreviated radio report. Once plaintiff arrived at the hospital, he engaged the nurse in confrontational conversation, blocking her egress by standing close to her while she was against a wall and, at one point, asking whether she wanted to " 'take this outside.' "

¶ 10        The fourth alleged incident occurred the morning of February 27, 2012. Plaintiff engaged in a verbal altercation with a fellow firefighter regarding garbage being mixed with recyclables. The exchange was described as less than cordial on plaintiff's part, with many an "F-bomb" being dropped against the coworker.

¶ 11        In plaintiff's administrative statement, he "[did] not recall exactly what was said at the scene" of the incident where a man had fallen from a scaffolding. When asked whether he made any comment about the man being a Green Bay Packers fan and his injury thus being his just desserts, plaintiff responded, "[m]y recollection of the event, I did not use words in that context. *** I do recall trying to make a connection with a patient who was conscious and made some inference to the fact that I was a Bears fan, he was a Packer fan." Plaintiff indicated that such a comment would be an ice-breaker when trying to make a connection, such as "whether it's our receding hairlines are similar" or some other "humanality [*sic*] of exchange." Plaintiff did not recall making a comment about the sign that said "Bears suck." He did not recall saying something like "that's what you get for being a Packers fan" and did not think that it sounded like something he would have said. When asked why his coworkers would report that he said something to that effect, plaintiff refused to speculate, offering only that they likely did not hear everything or understand the context of his words.

¶ 12        Plaintiff's coworker, firefighter Lake, was on the scene with plaintiff that day, and on January 25 he wrote a note that plaintiff, upon viewing the man lying facedown on the ground, in critical condition, said, " 'So he fell from the Bears suck scaffolding. That's what you get for being a Packers fan.' " Lake found the comment, which was heard and corroborated by three other coworkers on the scene, "belittling" and "unprofessional."

- 4 -

¶ 13      Plaintiff's administrative statement continued with the incident at the scene of the auto accident. Plaintiff had responded to the accident, in which a car was turned on its side, resting on the median between eastbound and westbound traffic. The occupants were still inside the car and could not exit the vehicle. Plaintiff was asked whether he called any of his coworkers on the scene "dumbasses or idiots." Plaintiff responded, "I recall a comment was made loosely around that." Clarifying, plaintiff said he uttered something at coworkers that might have included those words, because, upon arriving at the scene, coworkers were trying to get at the occupants through the windshield without first stabilizing the car and without using a protective blanket for the occupants to protect them from the breaking of the windshield.

¶ 14      Regarding the third incident, with the nurse, plaintiff recollected that he was traveling by ambulance with a carjacking victim to the Condell hospital when he communicated with a Condell nurse. He was not driving the ambulance. Plaintiff first communicated to the nurse that they were transporting a 25-year-old female victim of a carjacking incident. The nurse then interrupted him to ask what the woman's injuries were. He began his report again, and he did not remember slowing down his words or repeating anything sarcastically. After arriving at the hospital, plaintiff met the nurse face-to-face in the paramedics' room. He said that she tried to explain how she preferred to receive reports, with the major injuries reported first, which he said was not consistent with firefighter-report protocol. Plaintiff described their interaction as "an exchange, discussion, argument." Their interaction lasted a few minutes, and "both parties felt strongly on their positions, and neither party seemed to be wanting to give at all on their [positions]." Plaintiff said that they had a second exchange that lasted about 30 seconds. After writing up his report, plaintiff saw his coworker speaking with the nurse, but he did not recollect what they were speaking about. Plaintiff believed that at no time did he pin her against the wall or "encumber[ ] her in any shape or form."

¶ 15      However, the nurse painted a different picture of their interaction, as described in a letter she wrote regarding the incident. In her letter, she identified herself as the charge nurse who answered the radio call from the Gurnee fire department. She said that she needed to request an abbreviated report, which she knew was unusual. She knew immediately that plaintiff was upset with the request, but she figured she would explain further upon his arrival at the emergency room (ER). However, upon meeting plaintiff in the medic report room, she found him to be "enraged by [her] very presence," and he would not allow her to explain herself or discuss the situation. She found him intimidating and verbally abusive. Plaintiff approached her when she was speaking to his partner, and he asked her, " 'Do you want to take this outside?' " She felt threatened and afraid.

¶ 16      Mike Kulczycki, plaintiff's coworker that day, wrote a letter on January 28, 2012, relating the incident. Kulczycki observed plaintiff and the nurse arguing in the ER, but he kept walking to a back room. In the back room he could hear plaintiff, "in a raised voice, belittle the nurse." He wrote that he heard plaintiff cut the nurse off, saying, " 'You need to learn your job!' " and, " 'If you are going to be the nurse that answers the phone than [sic] you better learn the paramedics job and our protocol!' " He described plaintiff's tone as "raised, angry, and condescending." The nurse "never raised her voice" and kept trying to apologize. When Kulczycki went to apologize to the nurse for plaintiff's behavior, plaintiff stopped and said something rude and condescending to the nurse and then left. In the ambulance, plaintiff told

Kulczycki that the argument had begun because the nurse interrupted his radio report twice that day and once on a radio report a week prior.

¶ 17    Plaintiff addressed the fourth incident, which involved plaintiff and firefighter Muligano. Near the start of their shifts, plaintiff said, Muligano approached him and asked why there were recyclables mixed with the garbage. Plaintiff responded by saying, in effect, that if there were recyclables in the garbage they were going to stay there. Muligano told plaintiff that he was "an advocate for recycling," and plaintiff answered that, basically, he did not care. Their exchange continued with Muligano asking that plaintiff leave the recycling for him in the future, and plaintiff then used an expletive to tell Muligano to get out of his face.[1] Plaintiff also said something to the effect of, "You should be a shift mate and get up to wash the rigs in the morning," referring to past behavior, and told Muligano that he should clean the kitchen. The exchange occurred with another coworker present and a civilian in the vicinity. Plaintiff admittedly raised his voice and said something to the effect of, "I've got nothing to f***ing say to you, go take it up with your lieutenant." This interaction between Muligano and plaintiff was also documented in a letter written by Muligano in which Muligano expressed that he did not appreciate plaintiff's overall treatment of him and that plaintiff was "consistently degrading and unprofessional."

¶ 18    In the Commission's finding and decision, the Commission specifically referenced only two of the alleged incidents of misconduct and/or shortcomings, to wit, the January 23 "Bears suck" incident and the January 25 incident involving his interaction with the nurse. In rendering its decision, the Commission considered plaintiff's administrative statement, the fire department's notification of charges and allegations, emails from plaintiff's counsel, and statements from firefighters, paramedics, and the nurse regarding the alleged incidents. On the basis of this evidence, the Commission found that "the subject matter of [plaintiff's] *** actions are [*sic*] directly related to his Firefighter/Paramedic duties," "[his] acts of misconduct are not to be taken lightly," "[he] failed to uphold the high standards and duties of his office," and, by reason of its conclusions of fact, "[he] has demonstrated a substantial shortcoming in performance and misconduct affecting his abilities to perform the duties of a Fire Lieutenant." Accordingly, pursuant to the Commission's rules and regulations and section 20(d) of the Promotions Act (50 ILCS 742/20(d) (West 2010)), the Commission ordered that plaintiff be passed over for promotion to the rank of lieutenant. However, the Commission stated that it was not removing plaintiff from the promotion list, assuaging plaintiff's contestation that the Commission could not remove him from the list.

¶ 19    On May 18, 2012, plaintiff filed his complaint in the circuit court, seeking review of the Commission's decision. The issue was briefed and the court heard oral argument. On October 17, 2012, the court entered a final order affirming the Commission's decision. Plaintiff's complaint was dismissed with prejudice. In reaching its decision, the court found that "[m]erely having ones [*sic*] name on a promotion list does not create the protected property right." Further, because plaintiff did not have a property interest in this case, he was not entitled to procedural due process protections, such that the Commission was entitled to consider written statements of others regarding plaintiff's on-the-job behavior, even if they

---

[1]Plaintiff admitted using the "F-word."

would otherwise amount to hearsay. The court found that all that was required of the Commission was to find that plaintiff demonstrated substantial shortcomings in his work performance or engaged in misconduct affecting his ability to perform the duties of a lieutenant, and then to document its reasons for that conclusion. The court found sufficient evidence to support the Commission's decision and that the Commission had documented its reasons. Therefore the court affirmed the Commission's decision.

¶ 20    Plaintiff timely appealed.

¶ 21                                    II. ANALYSIS

¶ 22                              A. Standard of Review

¶ 23    "When an appeal is taken to the appellate court following entry of judgment by the circuit court on administrative review, it is the decision of the administrative agency, not the judgment of the circuit court, which is under consideration." *Provena Covenant Medical Center v. Department of Revenue*, 236 Ill. 2d 368, 386 (2010). The standard of review we apply depends on the particular question presented on appeal–whether the question is one of law, one of fact, or a mixed question of both. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001).

¶ 24    We review *de novo* the conclusion of an administrative agency on a point of law. *Provena Covenant Medical Center*, 236 Ill. 2d at 387. However, because an administrative agency has experience and expertise on the issues it faces, we afford an agency's construction of law substantial weight and deference in recognition that, for ascertaining the legislature's intent, the agency is an informed source, which we would be remiss to ignore. *Id.* at 387 n.9. If the issue is one of fact, we will uphold the agency's finding unless it runs contrary to the manifest weight of the evidence. *Id.* at 386-87. But when an issue involves the legal effect of a given set of facts–"where the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard"–we review this mixed question of fact and law under the clearly erroneous standard. *Id.* at 387.

¶ 25    Plaintiff argues that all issues raised on appeal involve mixed questions of fact and law and that thus the clearly erroneous standard applies. However, the central issue before us is whether the consideration of hearsay evidence violated plaintiff's procedural due process rights. It is well established in Illinois that the issue of whether a party's procedural due process rights were violated is a legal question, reviewed under the *de novo* standard. *People v. Cardona*, 2013 IL 114076, ¶ 15; *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 271 (2004). We therefore review *de novo* that issue here. However, we review the Commission's findings of fact under the manifest-weight-of-the-evidence standard and its decision predicated upon those findings of fact–applying the law to its findings–under the clearly erroneous standard.

¶ 26                B. Forfeiture of Arguments Against Specified Defendants

¶ 27    Defendants Fred N. Friedl III, John Kavanaugh, James Gramer, and Thomas Draths contend that plaintiff has forfeited any argument against them on appeal. They argue that plaintiff's appellate brief is directed solely against the Commission and that he made no

- 7 -

arguments against them before the Commission or the circuit court. Plaintiff admits in his reply brief that he "has not made any argument as to the specified Defendants." However, plaintiff named the specified defendants to ensure compliance with section 3-107 of the Code of Civil Procedure (Code) (735 ILCS 5/3-107 (West 2012)). This section of the Code requires that, "in any action to review any final decision of an administrative agency, the administrative agency and all persons, other than the plaintiff, who were parties of record to the proceedings before the administrative agency shall be made defendants." 735 ILCS 5/3-107(a) (West 2012). As these specified defendants were named as parties of record before the administrative agency, they were properly named by plaintiff on appeal. Furthermore, there were no arguments to forfeit against the specified defendants, as plaintiff admits–they were named merely, but properly, in compliance with the statute.

¶ 28                              C. Plaintiff's Property Interest

¶ 29        Plaintiff argues that the Commission relied upon inadmissible hearsay statements in reaching its decision to pass over his name on the promotion list. In making this argument, plaintiff assumes much, not the least of which being that he had a protected property interest giving rise to the protections of procedural due process.

¶ 30        Before a party is entitled to procedural due process, he must have a protectable liberty or property interest. *Perry v. Sindermann*, 408 U.S. 593, 599 (1972); *Chicago Teachers Union, Local No. 1 v. Board of Education of the City of Chicago*, 2012 IL 112566, ¶ 12 (" '[T]he starting point in any procedural due process analysis is a determination of whether one of those protectable interests is present, for if there is not, no process is due.' " (Internal quotation marks omitted.) (quoting *Wilson v. Bishop*, 82 Ill. 2d 364, 368 (1980))). Therefore, unless plaintiff here had a property interest[2] with respect to his position on the promotion list, he was not entitled to due process at his hearing before the Commission–*i.e.*, he has no basis to complain about the Commission's use of hearsay evidence. See *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("He must, instead, have a legitimate claim of entitlement to [have a property interest]. *** It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims."); *Bartlow v. Shannon*, 399 Ill. App. 3d 560, 571 (2010) ("The due process analysis begins with a determination of whether a protectable interest–in life, liberty, or property–exists."); see also *Colquitt v. Rich Township High School District No. 227*, 298 Ill. App. 3d 856, 865 (1998) (admission of hearsay in administrative proceeding can result in denial of procedural due process).

¶ 31        Plaintiff spends no time in his initial brief establishing how he had a property interest that entitled him to due process. Rather, the issue is raised by defendants in their response briefs.[3] This does not necessarily mean that the argument is forfeited, however, as Illinois Supreme

---

[2]No argument was made regarding a liberty interest, nor would such an argument fit the facts here.

[3]Two separate response briefs were filed–one by defendants Friedl, Kavanaugh, Gramer, and Draths, and one by defendants the Commission, Gurnee, George Iler, Lori Hubbartt, and Ty Bonds. Plaintiff filed a separate reply to each response brief.

Court Rule 341(j) (eff. Feb. 6, 2013) "permits appellants to reply to arguments presented in the brief of the appellee." *People v. Whitfield*, 228 Ill. 2d 502, 514 (2007). Plaintiff does make an argument as to the existence of his property interest in his reply briefs, and we will address this issue instead of deeming it forfeited.

¶ 32    Defendants argue that, in Illinois, merely placing a public employee's name on a promotion list does not create a property interest requiring due process protections. In support they cite *Schlicher v. Board of Fire & Police Commissioners*, 363 Ill. App. 3d 869 (2006), where a police officer claimed that he had a vested right to a promotion based on the board's "historical policy" of promoting the officer ranked first on the list. *Id.* at 875. However, this historical policy was not aligned with the board's actual policy, *i.e.*, that the board had discretion to choose from among the top three candidates–a fact that the board had communicated to the plaintiff and that he indicated he understood. *Id.* The plaintiff "essentially presuppose[d] that the Board was obligated to select him for promotion once there was a vacancy while his name appeared at the top of the promotion list," but because the board had discretion to choose, his argument that he had a property interest failed. *Id.* The court cited a Seventh Circuit case, *Hermes v. Hein*, 742 F.2d 350 (7th Cir. 1984), where the plaintiffs similarly claimed a property interest in promotion by way of a departmental policy but the *Hermes* court found that there was no evidence that the policy was ever promulgated through the department or stated to any of the plaintiffs. *Id.* at 355. Accordingly, the *Hermes* court found that the plaintiffs had no due process protections because, under the applicable Illinois law, there was discretion to choose from among the top three candidates on the list. *Id.*

¶ 33    Defendants go on to cite many more cases, all in support of their argument that plaintiff had no property interest in a promotion. See *Moore v. Muncie Police & Fire Merit Comm'n*, 312 F.3d 322, 327 (7th Cir. 2002) (while addressing the issue of a property interest in prospective employment, noting in passing that an employee does not have a property interest in prospective promotion); *Billish v. City of Chicago*, 962 F.2d 1269, 1300 (7th Cir. 1992) (commission had discretion to choose candidate; insufficient evidence to establish property interest in promotion); *Petru v. City of Berwyn*, 872 F.2d 1359, 1363-65 (7th Cir. 1989) (Illinois Municipal Code did not create property interest in promotion for candidate at top of promotion list, because the city had no obligation to fill the vacancy at any particular time and the fire department was not authorized by the mayor, as required by statute, to hire anyone to fill the vacancy); *United States v. City of Chicago*, 869 F.2d 1033, 1036 (7th Cir. 1989) (employee had no property interest in promotion because governing law gave "unfettered discretion to choose from among the five highest rated applicants"); *Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir. 1985) (no property interest in promotion to lieutenant for police officers; promotion officials had discretion to choose among highest-rated applicants); *Sundstrom v. Village of Arlington Heights*, 826 F. Supp. 1143, 1148-49 (N.D. Ill. 1993) (plaintiff had no property interest in promotion because commission had discretion under Illinois statute to choose from among top three candidates on the promotion list); *Brunke v. Board of Fire & Police Commissioners*, 99 Ill. App. 3d 25, 28 (1981) (no property interest in promotion, because board had discretion to choose between two candidates); *McCoy v. Board of Fire & Police Commissioners*, 79 Ill. App. 3d 742, 744 (1979) (no property interest in promotion; promotion was matter of discretion).

¶ 34    These cases repeat the same general proposition over and over: when the promoting authority has discretion to choose among candidates on a promotion list, an employee does not have a property interest in a prospective promotion by virtue of his or her name being on that list. This reasoning makes sense, given that it would be inconsistent with the expressed limits of due process protections to grant property interests to those who have no concrete claim of entitlement to a promotion but are instead at the mercy of an authority's discretion. See, *e.g.*, *Roth*, 408 U.S. at 577 (To have a property interest, "[h]e must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."); *Suburban Downs, Inc. v. Illinois Racing Board*, 316 Ill. App. 3d 404, 413 (2000) (property interest requires legitimate claim of entitlement, which can arise from statute, regulation, municipal ordinance, or express or implied contract).

¶ 35    Defendants argue that plaintiff had no property interest in a promotion, because the Commission had discretion to pass over him if it found that he demonstrated substantial shortcomings in his work performance or engaged in misconduct affecting his ability to perform the duties of a lieutenant. However, the discretion present in the cases that defendants cite does not exist here. In the cases that defendants cite, the board or commission had direct statutory authority to select from among top candidates on a promotion list; no such unfettered discretion exists in this case. Section 20(d) of the Promotion Act (50 ILCS 742/20(d) (West 2010)) reads:

> "Whenever a promotional rank is created or becomes vacant *** the appointing authority shall appoint to that position the person with the highest ranking on the final promotion list for that rank, except that the appointing authority shall have the right to pass over that person and appoint the next highest ranked person on the list if the appointing authority has reason to conclude that the highest ranking person has demonstrated substantial shortcomings in work performance or has engaged in misconduct affecting the person's ability to perform the duties of the promoted rank since the posting of the promotion list."

Under the Promotion Act, the Commission *shall* appoint the highest-ranking person on the promotion list–not choose one from among the top three or so–*unless* it has reason to conclude that it should pass over that person due to substantial work-performance shortcomings or misconduct. Therefore, the issue of plaintiff's property interest is not so simple: unlike in the cases that defendants cite, the Commission's discretion here is not whether to promote plaintiff from among a group of eligible candidates but whether there is sufficient reason to take away his statutory expectation of a promotion. In other words, the discretion here is whether to deny a promotion, not to grant one.

¶ 36    Framed this way, we find that plaintiff did have a protectable property interest in a promotion, and was thus entitled to due process, for the following reasons. Whether a property interest is protectable under the fourteenth amendment to the United States Constitution is ultimately a question of federal constitutional law, but the resolution of federal law begins with what protectable interest, if any, state law provides. *Chicago Teachers Union, Local No. 1*, 2012 IL 112566, ¶ 13. A property interest can be created by state statute but also by contract or through a mutually explicit understanding. *Hermes*, 742 F.2d at 354-55. Therefore, our analysis must begin with: (1) whether an interest in a promotion can be a property interest, and

if so, (2) whether plaintiff had a "legitimate claim of entitlement" to the promotion. See *Hill v. Walker*, 241 Ill. 2d 479, 485 (2011) ("Procedural due process protections are triggered only when a constitutionally protected liberty or property interest is at stake, to which a person has a legitimate claim of entitlement.").

¶ 37    First, an interest in a promotion can be a protectable property interest. "State law can create a property interest in employment," and an interest in a promotion is an interest in employment. *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 106 (1990); see also *Hermes*, 742 F.2d at 354-55 ("A property interest in *promotion* need not arise out of a contract or statute, but may be based on a *de facto* promotional program." (Emphasis added.)). Moreover, the United States Supreme Court has "made clear that rights to public employment or promotion in a public service system, enforceable under the due process clause of the Fourteenth Amendment, exist" but "only to the extent accorded through statutes or regulations or both, by the public service system in question." *Koscherak v. Schmeller*, 363 F. Supp. 932, 934 (S.D.N.Y. 1973), *aff'd*, 415 U.S. 943 (1974). Therefore, plaintiff's claim to a property interest in his promotion turns on whether he had a legitimate claim of entitlement to the promotion. *E.g.*, *Walker*, 241 Ill. 2d at 485.

¶ 38    We hold that plaintiff did have a legitimate claim of entitlement to the promotion to lieutenant. Although defendants present a litany of cases purportedly standing for the proposition that plaintiff did not have a protectable property interest in the promotion, none of the cases are on point. Every case cited deals with a commission or a board having *discretion* to choose from among multiple eligible candidates for promotion–a situation presented when section 10-1-13 of the Civil Service in Cities Act (65 ILCS 5/10-1-13 (West 2010)) is the controlling statute. See, *e.g.*, *Moller v. Civil Service Comm'n*, 326 Ill. App. 3d 660, 664-65 (2001) (citing *City of Chicago*, 869 F.2d at 1038). Here, though, section 10-1-13 is not the only statute in play; section 20(d) of the Promotion Act also applies. As a basic matter of statutory construction, and of common sense, the more specific and particular statute will control over the more general statute addressing the same issue, especially if the specific statute was enacted after the general statute. *Bowes v. City of Chicago*, 3 Ill. 2d 175, 205 (1954). Section 10-1-13 addresses civil service promotions in general; section 20(d) of the Promotion Act specifically addresses promotions at fire departments. Under section 20(d) of the Promotion Act, the language of which is mirrored in the CBA, "the appointing authority *shall appoint* \*\*\* the person with the highest ranking on the final promotion list for that rank," unless the candidate has demonstrated substantial work-performance shortcomings or engaged in misconduct. (Emphasis added.) 50 ILCS 742/20(d) (West 2010).

¶ 39    We do not read section 20(d)'s provision of limited discretion to pass over the highest-ranking candidate as the type of discretion that would defeat a claim to a protectable property interest. Rather, we read the statute as creating a legitimate claim of entitlement for the highest-ranking candidate to the next available promotion, with discretion to pass over that candidate under certain, specified circumstances. That the statute provides limited discretion to pass over the highest-ranking candidate does not defeat this legitimate claim of entitlement. The limited discretion is a prudent articulation of when and why a promoting authority may pass over a candidate. The limited discretion does not equate to discretion to choose who will receive the next promotion, which would imply that no candidate had a legitimate expectation

of promotion; rather, it is discretion that the promoting authority may exercise to bypass a candidate's statutory legitimate expectation of and entitlement to promotion.

¶ 40    Therefore, the Commission might have acted properly in choosing to pass over plaintiff by finding that he demonstrated substantial work-performance shortcomings and/or misconduct affecting his ability to perform the duties of a lieutenant, but it owed him procedural due process in making its determination. See *Paskvan v. City of Cleveland Civil Service Comm'n*, 946 F.2d 1233, 1235-36 (6th Cir. 1991) (although city had discretion regarding promotion, plaintiff alleged sufficient facts to make procedural due process claim by arguing that city had waived its discretion through its practices); *Charles v. Baesler*, 910 F.2d 1349, 1352 (6th Cir. 1990) (procedural due process protections for man with contractual interest in promotion); *Moore v. Ware*, 2001-3341, at 12 (La. 2/25/03); 839 So. 2d 940 (police officer who had obtained permanent status and was senior officer on promotion list had a property interest in the promotion, of which he could not be deprived absent due process); *City of Riviera Beach v. Fitzgerald*, 492 So. 2d 1382, 1385 (Fla. Dist. Ct. App. 1986) (only candidate on promotion list for captain had reasonable expectation of promotion so as to invoke procedural due process protections); see also *Malcan v. Hall*, 812 F.2d 1401 (4th Cir. 1987) (*per curiam*) (plaintiff could have produced evidence of promotion and tenure entitlement that would have amounted to a property interest for due process purposes); *cf. Honulik v. Town of Greenwich*, 980 A.2d 880, 895 (Conn. 2009) ("In order to prevail, the plaintiff was required to establish that provisions of the town charter, pay plan, policy manual or the agreement created an entitlement that the highest ranked candidate automatically be promoted to police captain. *** [P]laintff has failed to do so.").[4] We must next determine what process plaintiff was due.

¶ 41                    D. Consideration of Hearsay Evidence

¶ 42    The specific violation of due process that plaintiff asserts is the admission of hearsay evidence against him, and we thus confine our analysis to whether the use of this evidence violated procedural due process.[5] First, we review whether the statements of which plaintiff complains–the statements made by anyone but plaintiff himself–were hearsay at all.

¶ 43    Although we generally review evidentiary rulings for an abuse of discretion (see *People v. Connolly*, 406 Ill. App. 3d 1022, 1026 (2011)), here the Commission did not rule on whether the statements of which plaintiff complains were hearsay. Therefore, we cannot logically give deference to a ruling that the Commission did not make.

¶ 44    Defendants offer several reasons why the statements either were not hearsay or fell under a hearsay exception. They argue that the statements were not hearsay, because they were considered for the effect they had on the Commission. Defendants seem to confuse a statement offered for its effect on a *listener* with a statement offered for its truth before a *tribunal*, the former being a category of nonhearsay and the latter not. See *People v. Dunmore*, 389 Ill. App.

---

[4]Recognizing the paucity of Illinois cases on point, we cite these cases from other jurisdictions for their similar rationales.

[5]Additional potential procedural due process issues, such as whether the Commission's "special meeting" provided for a meaningful opportunity to be heard, we leave for another day.

3d 1095, 1106 (2009). Defendants also argue that the statements fall under the "then existing state of mind" exception to hearsay. Ill. R. Evid. 803(3) (eff. Apr. 26, 2012). This argument again misses the mark, as the statements reported what *plaintiff* said or did, and the hearsay exception applies to statements about the *declarant's* state of mind, emotion, physical condition, or sensation. *Id.* Defendants next argue that the statements were not offered for their truth but, rather, were offered for another purpose: namely, to show plaintiff's work-performance shortcomings and/or misconduct demonstrating that he was not fit for promotion to lieutenant. This argument's persuasive hold is gossamer at best. Without being offered for their truth the statements would have little value for showing that plaintiff demonstrated substantial work-performance shortcomings or misconduct. The truth of the statements and the purpose of showing that plaintiff should be passed over for promotion are inexorably linked.

¶ 45    Plaintiff's declarations, as reported by the statements, were admissions and thus were not hearsay. Ill. R. Evid. 801(d)(2) (eff. Jan. 1, 2011) (admissions are not hearsay). However, the statements themselves, made outside of any proceeding before the Commission, were hearsay, *i.e.*, out-of-court statements offered to prove the truth of the matter asserted, and no hearsay exception applies. Plaintiff alludes to this issue in his reply brief by asking, rhetorically, "How do we know if the name of the person on the Statement is truly the person who wrote it? Under what conditions? Were the contents of the Statements truly what occurred, or what was suggested to the writers as having occurred?" The fear that plaintiff expresses is, succinctly, the danger of hearsay. See *People v. Carpenter*, 28 Ill. 2d 116, 121 (1963) ("The fundamental purpose of the hearsay rule was and is to test the real value of testimony by exposing the source of the assertion to cross-examination by the party against whom it is offered.").

¶ 46    Because the Commission did in fact consider hearsay evidence, we must determine whether such consideration violated due process. "[A]n administrative proceeding is governed by the fundamental principles and requirements of due process of law. However, due process is a flexible concept and requires only such procedural protections as fundamental principles of justice and the particular situation demand." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 92 (1992). "Although due process envisions an orderly proceeding wherein notice and an opportunity to be heard are afforded, procedural due process in an administrative setting does not always require application of the judicial model." *Colquitt v. Rich Township High School District No. 227*, 298 Ill. App. 3d 856, 860-61 (1998); see also *Petersen v. Plan Comm'n*, 302 Ill. App. 3d 461, 466 (1998) (due process in administrative proceeding does not require a judicial proceeding; it is satisfied by a procedure proper to the nature of the determination to be made). The procedural safeguards required vary with the circumstances of the case, "depending on (1) the significance of the private interest which will be affected, (2) the risk of the erroneous deprivation of that interest through the procedures used, and (3) the significance of fiscal and administrative burdens that the additional or substitute procedural safeguards would entail." *Colquitt*, 298 Ill. App. 3d at 861. Various cases have held that due process in an administrative proceeding requires "the opportunity to be heard, *the right to cross-examine adverse witnesses,* and impartial rulings on the evidence." (Emphasis added.) *Sindermann v. Civil Service Comm'n*, 275 Ill. App. 3d 917, 923 (1995); see also *Abrahamson*, 153 Ill. 2d at 95; *Bartlow v. Shannon*, 399 Ill. App. 3d 560, 570 (2010) (due

process requires notice and an opportunity to be heard, as well as the right to cross-examine adverse witnesses). However, cross-examination–and, impliedly, a prohibition of hearsay–is not always required by due process. At the core of due process is notice and a meaningful opportunity to be heard. See *Trettenero v. Police Pension Fund*, 333 Ill. App. 3d 792, 799 (2002); *In re Estate of Gustafson*, 268 Ill. App. 3d 404, 409 (1994); see also *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 185 (2002) (right to cross-examine was not absolute in quasi-judicial proceeding); *Brown v. City of Detroit*, 259 F. Supp. 2d 611, 620 n.7 (E.D. Mich. 2003) (recognizing that no court has squarely addressed what process is due when plaintiff is denied a promotion, and finding due process met because the CBA, which was followed, provided for grievances and arbitration).

¶ 47    Generally, procedural due process protections preclude the admission of hearsay evidence in an administrative proceeding. *Magnus v. Department of Professional Regulation*, 359 Ill. App. 3d 773, 791 (2005) (citing *Abrahamson*, 153 Ill. 2d at 94); *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 828 (2009). However, "where there is sufficient competent evidence to support an administrative decision, the improper admission of hearsay testimony in the administrative proceeding is not prejudicial error." *Magnus*, 359 Ill. App. 3d at 791; see also *Sudzus*, 393 Ill. App. 3d at 828. Moreover, administrative agencies are not bound by the strict rules of evidence that apply in a judicial proceeding. *MJ Ontario, Inc. v. Daley*, 371 Ill. App. 3d 140, 149 (2007). This is because procedural due process is flexible, and the process due depends on multiple factors. *Stratton v. Wenona Community Unit District No. 1*, 133 Ill. 2d 413, 433 (1990). We must ask whether the consideration of hearsay evidence deprived plaintiff of a meaningful hearing, taking into consideration (1) the significance of the private property interest, (2) the risk of erroneous deprivation of that interest under the procedures used, and (3) the practical burdens of providing more or substitute process, *e.g.*, how much time and money should be spent on the process. See *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

¶ 48    In a letter from the Commission's attorney, defendant Colleen O'Keefe, to McGuire, O'Keefe relayed that the Commission would convene a special meeting on April 10, 2012, the purpose of which was to determine whether plaintiff had engaged in misconduct or demonstrated substantial work-performance shortcomings. The meeting was to be convened pursuant to Rule 6 of Gurnee's civil service rules and regulations, which stated that procedures regarding promotion were governed by the CBA. The letter also advised McGuire that the Commission would not hold an evidentiary hearing and stated, "The Commission has determined that neither its Rules or Regulations, the Village of Gurnee and IAFF Agreement nor the Illinois Fire Department Promotion Act provide for an evidentiary hearing prior to the Commission making its determination." The letter then invited McGuire to present any "statutory or case law that provides for the contrary." The Commission's finding and decision reiterated the salient substance of the letter: that the special meeting would take place according to the Commission's rules and the CBA, and that there would be no evidentiary hearing held.

¶ 49    As the record does not include Gurnee's rules and regulations, or the pertinent portion of the CBA, we cannot say with certainty whether the Commission followed the proper procedures in conducting the special meeting. However, plaintiff made no objection on the

record to O'Keefe's letter and raises no argument against the procedures used (other than objecting generally to the Commission's consideration of hearsay evidence). Any doubts that arise from the incompleteness of the record are resolved against the appellant. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 157 (2005). Therefore, we presume, for purposes of this opinion, that the Commission followed all its relevant rules and regulations in reaching its decision. See *Provena Health v. Illinois Health Facilities Planning Board*, 382 Ill. App. 3d 34, 42 (2008) ("Generally, administrative agencies are bound to follow their own rules as written ***."); *McElroy v. Cook County*, 281 Ill. App. 3d 1038, 1042 (1996) (agency violated its own procedures and therefore violated plaintiff's right to procedural due process); *Perez v. United States*, 850 F. Supp. 1354, 1365 (N.D. Ill. 1994) ("The failure of an agency to follow its established procedures or regulations can constitute a denial of procedural due process."). But see *Ertl v. City of De Kalb*, 303 Ill. App. 3d 524, 530 (1999) (an administrative agency's failure to follow its own rules is not actionable unless the failure prejudices the plaintiff).

¶ 50    Operating under the assumption that the consideration of hearsay was permitted by the Commission's rules and regulations in this case, we weigh the three factors set forth by the United States Supreme Court and the Illinois Supreme Court to determine whether the consideration of hearsay violated due process. See *Lyon v. Department of Children & Family Services*, 209 Ill. 2d 264, 277 (2004) (setting forth the three factors to consider when evaluating a procedural due process claim); *Colquitt*, 298 Ill. App. 3d at 861 (factors are: "(1) the significance of the private interest which will be affected, (2) the risk of the erroneous deprivation of that interest through the procedures used, and (3) the significance of fiscal and administrative burdens that the additional or substitute procedural safeguards would entail."). We conclude that the Commission's consideration of hearsay did not violate due process.

¶ 51    First of all, regarding the nature of the private interest: plaintiff's property interest is in a *prospective* promotion. As we found, the Promotion Act created a legitimate expectation of a promotion. However, an interest in a prospective promotion is not the same as an interest in continued employment, or even an interest in maintaining the rank currently possessed (and the pay to which one has become accustomed), such as in the event of a demotion. Compare 65 ILCS 5/10-2.1-17 (West 2010) (providing a hearing for discharged firefighters and police officers), with 65 ILCS 5/10-2.1-15 (West 2010) (no mention of a hearing for firefighters and police officers passed over for promotion), and 50 ILCS 742/20(d) (West 2010) (no mention of a hearing for firefighter passed over based on misconduct or work-performance shortcomings; requiring only documentation of reasons). Moreover, plaintiff was not being removed from the promotion list; he was only being passed over for this specific promotion, and his name would remain on the list until the list would naturally expire. In fact, the novelty of this situation–finding a property interest in a prospective promotion for purposes of procedural due process–is in itself evidence of the lack of a strong private interest in a prospective promotion. Therefore, the nature of plaintiff's protectable property interest does not weigh in favor of more protection under due process.[6]

---

[6]Some courts have treated the first factor as asking only whether there was a protectable private interest. See, *e.g.*, *Consiglio v. Department of Financial & Professional Regulation*, 2013 IL App (1st) 121142, ¶ 19 ("Under the first factor, a professional license constitutes a property interest."). However,

¶ 52	Secondly, we consider the risk of the erroneous deprivation of plaintiff's interest through the procedures used. We note that this decision was rendered not by a jury but rather by a professional fact-finding committee tasked with deciding particular cases within its specific administrative purview. Plaintiff was represented by counsel. In his administrative statement, he was able to address the accusations against him and provide denials, explanations, or clarifications. The Commission considered written statements not only from plaintiff's coworkers but from others involved in the alleged incidents, including the nurse from the Condell hospital. In theory, plaintiff could have had others submit written statements on his behalf; we know of no reason why he could not have (again, we do not have a complete record as to the Commission's rules and regulations, an incompleteness we resolve against plaintiff). Although there is risk of error in admitting hearsay evidence, the risk here is neither monumental nor unacceptable. The Commission specializes in adjudicating the affairs of fire department employees, may assess the credibility of statements in light of the totality of evidence, and may consider evidence from various sources, adverse or friendly. This factor does not help plaintiff.

¶ 53	Finally, we consider the government's interest, that is, the practical burdens of providing more or substitute process. In order to eliminate the use of hearsay evidence, the Commission would have to create a process tantamount to a judicial trial at which witnesses could be cross-examined. Scheduling could be problematic, as it could entail calling in a large number of fire department personnel on a particular date. Scheduling a trial as opposed to relying on documentary evidence would invariably delay the decision. Moreover, costs would increase, not the least of which being lawyers' fees, in a more protracted litigation. It clearly would serve the government's interest in efficiency–as to both time and money–to continue to execute the procedures that the Commission currently has in place, including the consideration of hearsay.

¶ 54	Weighing all these factors–the relatively weak private interest, the marginal risk of error in decision-making, and the clear government interest in efficiency–we conclude that the Commission's consideration of hearsay evidence, in the form of written statements, against plaintiff was not a violation of procedural due process.

¶ 55	E. The Commission's Finding and Decision

¶ 56	Plaintiff also argues that, even with the hearsay evidence before the Commission, it was not established that he demonstrated substantial work-performance shortcomings or engaged in misconduct. Plaintiff analogizes his situation to that of the plaintiff in *Hale v. Hellstrom*, 101 Ill. App. 3d 1127 (1981). However, *Hale* concerned a police officer who was suspended for violating a department rule and we held that, as his violation was not intentional, it did not

---

the three-factor test guides courts in assessing how much process is due in a given situation, which logically already presumes that there is a protectable interest for purposes of procedural due process. If there were no protectable interest, property or otherwise, the amount of process due would be known with certainty: none. Therefore, we apply the first factor by considering the nature of the interest on a continuum–some interests being so important that they require the most stringent procedural safeguards against deprivation, and some of lesser consequence such that their loss does not readily invoke grand condemnations such as "miscarriage of justice."

justify that suspension. *Id.* at 1130-31. Plaintiff essentially tries to compare apples to oranges: the *Hale* case dealt with a police rule and whether the plaintiff's violation justified his suspension; here, we address the Promotion Act and whether the evidence of plaintiff's actions supported his being passed over for a promotion.

¶ 57 The issue is whether under the Promotion Act the Commission's finding, that plaintiff demonstrated substantial work-performance shortcomings and/or misconduct affecting his ability to perform the duties of a lieutenant, was against the manifest weight of the evidence. See *Provena Covenant Medical Center*, 236 Ill. 2d at 386-87. We hold that it was not. There was evidence before the Commission detailing that plaintiff: (1) in the presence of coworkers and others, including an injured man to whom he was to attend, stated "So he fell from the Bears suck scaffolding. That's what you get for being a Packers fan."; (2) became frustrated and verbally aggressive with a nurse, intimidating her, making her feel uncomfortable, and asking her if she wanted to take their argument "outside"; and (3) had a less than cordial conversation with a coworker regarding the recycling, getting upset and using curse words in range of civilians and other coworkers, an incident that the Commission did not consider but that would have supported its finding. This evidence did not come solely from others' statements but was also derived from and corroborated by plaintiff's administrative statement.

¶ 58 Alone, none of these incidents is overly alarming. Bad behavior has different levels, and plaintiff's might not have risen to a level warranting disciplinary action, but it was not unreasonable for the Commission to not reward such behavior with a promotion. In a civil service position as important as that of firefighter-paramedic, where life and limb are often at stake, we will not second-guess the Commission's adherence to a high standard of professionalism within the fire department or bemoan plaintiff's lost opportunity for a promotion. The Promotion Act, allowing the Commission to pass over plaintiff for misconduct, recognizes another important interest: the interest of the public in having dependable and professional officers in its civil service positions. The Commission found the incidents to amount to substantial work-performance shortcomings and misconduct affecting plaintiff's ability to perform the duties of a lieutenant, and it documented its reasons for this determination. As that finding was not against the manifest weight of the evidence, its decision to pass over plaintiff for a promotion was not clearly erroneous.

¶ 59                                    III. CONCLUSION

¶ 60 For the reasons stated, we affirm the judgment of the Lake County circuit court affirming the Commission's decision to pass over plaintiff for a promotion to the rank of lieutenant in the Gurnee fire department.

¶ 61 Affirmed.